## UNITED STATES v. WIGHT.

*District Court, E. D. Michigan.* March 10, 1889

1. POST-OFFICE—LARCENY FROM MAILS—REV. ST. U. S. § 5467.
   The two clauses of Rev. St. U. S. § 5467, describe two separate and distinct offenses, viz.: (1) Secreting, embezzling, or destroying a valuable letter; and, (2) stealing the contents of such letter. These two clauses should be read disjunctively.

2. SAME—INDICTMENT.
   It is not necessary, in an indictment under the first clause for secreting and embezzling, to allege that the letter had not been delivered to the party to whom it was directed; nor, under the second clause, for stealing the contents, to allege that the letter was intended to be conveyed by mail or mail carrier.

3. SAME—LETTERS DEPOSITED IN LETTER-BOX.
   It is sufficient evidence that letters are "intended to be carried by a letter carrier" that they are deposited in pillar-boxes to be carried to the post-office, although it be intended to intercept them after they have passed through the hands of a suspected employé.

**4. Same—Decoy Letter.**
It is no defense to an indictment of a post-office employé for embezzlement that the letter embezzled was a "decoy," addressed to a fictitious person or place, and was never intended to be delivered, nor that it was made up so as to attract attention, and indicate that it contained money.
(*Syllabus by the Court.*)

*Indictment for embezzlement from the mails.* On motion in arrest of judgment, and for a new trial.

Defendant, Charles H. Wight, who was an employé in the post-office at Detroit, was convicted, under Rev. St. U. S. § 5467, of embezzling certain valuable letters, and also of stealing their contents. The first, third, and fifth counts charged him with embezzling certain letters containing money, which came into his possession in the regular course of his official duties, and were intended to be carried by letter carrier; but there was no averment in either count that the letter had not been delivered to the party to whom it was addressed. The second, fourth, and seventh counts charged him with stealing the contents of the same letters before they had been delivered to the party to whom they were directed; but there were no averments in either of these last counts that the letter was intended to be conveyed by mail, or carried or delivered by any mail carrier, etc. In support of the motion in arrest of judgment it was urged that the indictment was fatally defective, and in support of the motion for a new trial that it appeared that the letters were decoys, and were addressed to fictitious persons, and to post-offices, streets, or buildings which had no existence, with the design that they should be intercepted after they had passed through defendant's hands, and before they left the post-office at Detroit.

*Charles T. Wilkins,* Asst. Dist. Atty.
*H. M. Duffield,* for defendant.
Before BROWN and JACKSON, JJ.

BROWN, J. The circuit judge and myself had occasion not long since to hold that section 5467 covered the offense of secreting and embezzling valuable letters, as well as stealing their contents. *U. S.* v. *Atkinson,* 34 Fed. Rep. 316. A similar ruling had been made by Judge BENEDICT in *U. S.* v. *Pelletreau,* 14 Blatchf. 126, although this case escaped our attention at the time. It is intimated in both opinions, however, that the word "and" might be implied to connect the two clauses of the statute, and thus remove every possible doubt as to its construction. Perhaps it would have been well to have substituted "or" for "and," and thus removed any doubt as to the disjunctive nature of the two clauses, since the twenty-first section of the crimes act of March, 1825, from which this act was originally taken, uses that conjunction to connect the two clauses, instead of the other.

The authority of these cases is not disputed, but it is insisted that the two clauses of the section should be read conjunctively, and the proviso "that the same shall not have been delivered to the party to whom it is directed" shall apply to both clauses. The case of *U. S.* v. *Taylor,* 1

Hughes, 514, is relied upon as decisive of this proposition, but we do not find any such point decided in that case. It was urged by counsel in defense of the prisoner that the two clauses of the section constituted but one offense, and that the indictment must in each count charge the embezzlement, and also the stealing, but this construction was regarded by the court as unsound. The words "any such person" were held to refer only to any employé in the postal service, and not to an employé who has embezzled a letter intrusted to him in the course of his official duties. The court further held that two distinct offenses were created by the section. It is true that in delivering the opinion the learned judge remarked that "the letter embezzled and the letter whose contents are stolen must each be intended to be conveyed by mail, and must not have been delivered to the person to whom addressed," but he does not undertake to say that counts under the first clause must aver that the letter had not been delivered, nor, under the second clause, that they were such as were intended to be conveyed by mail or by a letter carrier. The letter embezzled must undoubtedly be embezzled before delivery to the person addressed, because it has been frequently held that the jurisdiction of the federal court ceases with the delivery of the letter to the addressee or his agent. So, a letter stolen must undoubtedly be such as was intended to be conveyed by mail or carried by a mail carrier, since the statute has clearly no application to private letters or dispatches intrusted to one person to be delivered to another, or to letters which are not a fit and proper subject of deposit in the mails. We quite agree with the conclusion of the learned judge in the *Taylor Case* that the section in question defines two separate offenses, and we think that a count couched in the language of either clause is sufficient.

The motion for a new trial raises a much more serious question. The letters were decoys, prepared by the detectives of the post-office department in such a manner as to indicate that they contained money. They were addressed to fictitious persons, and to non-existent places of delivery, and were deposited in different boxes in the city of Detroit, with the intent that they should be taken up by the postmen or carriers, carried to the post-office, and delivered to the defendant, and, in case he did not embezzle them, to be returned to Mr. Smith, the detective. The duties of the defendant were to sort and place in the proper receptacle in the post-office letters which did not go directly to the carriers by reason of imperfect addresses. All the letters described in the indictment came into the post-office in the usual course of business. They were laid upon the table, or put into a receptacle of which it was the duty of the defendant to examine the contents, in pursuance of a plan to test him; and it was the understanding that if any of these letters should pass through his hands they were to be taken by the superintendent of mails and returned to the detective. Defendant contends that under all the circumstances the conviction cannot be sustained, because the letters were not intended to be conveyed by mail, or carried or delivered by any mail carrier, within the meaning of section 5467. If counsel intend by this to assert that a decoy or test letter cannot be the subject of embezzle-

ment, or its contents of larceny, under this section, I can only say that 9 out of 10 convictions of post-office employés in this district for the past 30 years have been secured by means of decoys; that a large majority of the cases reported in the books were based upon decoys; and that dozens of men throughout the country are undergoing punishment for interference with this class of correspondence. Such a general consensus of opinion on the part of courts is certainly a strong argument in favor of its soundness, and since the decision of Mr. Justice NELSON in the case of *U. S.* v. *Cottingham*, 2 Blatchf. 470, and that of Mr. Justice CURTIS in *U. S.* v. *Foye*, 1 Curt. 364, we had not supposed it to be a matter of doubt. Even in the opinion of Judge DILLON in *U. S.* v. *Whittier*, 5 Dill. 35, and in that of Mr. Justice HARLAN in *U. S.* v. *Matthews*, 35 Fed. Rep. 890, there is an explicit recognition of the propriety of making use of decoy letters for the purpose of detecting frauds upon the post-office department. There is nothing inconsistent with this in the English case of *Reg.* v. *Gardner*, 1 Car. & K. 628, or in *Rathbone's Case*, Car. & M. 220. Indeed, in *Reg.* v. *Newey*, 1 Car. & K. 630, note, and in *Reg.* v. *Poynton*, 9 Cox, Crim. Cas. 249, there is also a recognition of the lawfulness of test letters; and in *Reg.* v. *Young*, 1 Denison, Cr. Cas. 198, the court held unanimously that a decoy letter with a fictitious address, posted only to test the honesty of the prisoner, was within the statute. On principle there is a clear distinction between artifices used to detect persons suspected of being engaged in criminal practices and means used to tempt them to adopt such practices. Thus it would be clearly improper to put counterfeit money in the hands of a suspected person, that another may go and induce him to pass it or sell it in order to lay the foundation of a complaint; but it has never been doubted that a detective may purchase counterfeit money of a suspected person for the purpose of ascertaining whether he has it in possession. An excellent discussion of the subject and collocation of authorities by Mr. Wharton will be found in a note to *Bates* v. *U. S.*, 10 Fed. Rep. 97.

Defendant's main reliance in this case, however, is upon the fact that the letters were addressed to a fictitious person, and to a post-office, street, or number (varying in each case) which did not exist, with the design that they should be intercepted if they passed safely through his hands. These letters were all deposited in the regular boxes in different parts of the city, and were intended to be carried by letter carrier to the post-office at Detroit, within the literalism of the statute. It is then only by importing into the act words which are not found there, viz., that they must be intended to be carried to " their place of destination," that the letters are taken out of the language of the statute. We know of no authority which holds directly that a letter must be intended to be carried through the mail to the person to whom it is addressed. On the contrary, it was expressly held by Mr. Justice CURTIS in *U. S.* v. *Foye*, 1 Curt. 364, that the purpose of the writer not to have the letter go to its apparent destination did not affect its character, or prevent it from being a letter intended to be transmitted by post, or take it out of the protection of the statute; and in *Reg.* v. *Young*, 1 Denison, Cr. Cas.

198, it was also held that it made no difference that the letter contained a fictitious address. Any letter which is not written *bona fide* for the purpose of communicating intelligence to the person whose name is upon the envelope is to a certain extent a fictitious letter, and it seems to us to make little difference whether the address be to an existent or non-existent person. All the cases cited by the counsel for defendant are distinguishable from this in the fact that the letter was laid upon the table of the suspected person with the design of being immediately intercepted, and the evidence excluded the idea that it was intended to be carried a rod by mail or carrier; in short, it was not within the words of the statute. Thus in *U. S.* v. *Rapp*, 30 Fed. Rep. 818, the package was placed directly in the "nixes" basket, of which defendant had charge. "It was," says the court, "to be torn open where it was placed." Defendant took it out of the basket, and embezzled it, and it was held not to be intended to be conveyed by mail; but the learned judge expressly declined to say that a decoy letter, when regularly mailed, might not be the subject of embezzlement. The same practice was pursued in *Reg.* v. *Rathbone*, Car. & M. 220, and in *Queen* v. *Shepherd*, 25 Law J. M. Cas. 52, and in both cases it was held not to be a post letter upon that ground; while in *Reg.* v. *Young*, 1 Denison, Cr. Cas. 198, the letter was mailed in the ordinary way, and the conviction was sustained. In the case of *U. S.* v. *Denicke*, 35 Fed. Rep. 407, it is broadly decided that a decoy letter with a fictitious address is not within the statute, but in this part of the opinion we find ourselves unable to concur. It surely will not be contended that a letter accidentally misdirected to a person or post-office that did not exist could not be the subject of embezzlement; and we are unable to perceive why a decoy letter, intentionally misdirected for the purpose of its reaching the hands of the defendant, stands upon any different principle, if it be once conceded that the statute applies to decoys. There are undoubtedly certain intimations made by Mr. Justice HARLAN in *U. S.* v. *Matthews*, 35 Fed. Rep. 891, adverse to the views here expressed, but the case itself differs from the one under discussion in the point already alluded to, viz., that the letter was never regularly mailed or intended to be carried, but was thrown upon the dumping table, from which it was transferred to the backing or canceling table, where defendant was working, and at which the embezzlement took place. It is true that he says: "A letter intended to be conveyed by mail is one which is intrusted to, or comes into the possession of, some postal employé, to be transmitted by means of the mail or mail agencies of the United States to the person to whom, under whatever name it is addressed; or, which is the same thing, to some person authorized to receive it from the mail before or after it has reached the particular place to which it is directed;" and he holds "that it cannot be that a letter is intended to be conveyed by mail, within the meaning of the statute, when the postal authorities, acting in co-operation with the sender, intend, after the letter is put in the mail, to resume possession of it themselves, or to permit the sender to do so before it reaches the hands of any carrier, messenger, or other postal employé for delivery to

the proper person." Notwithstanding this language, we do not think the learned justice means to say that a letter which is designed to be intercepted by the post-office authorities before it reaches its place of destination is not within the statute, since he quotes and distinguishes the case of *U. S.* v. *Foye*, 1 Curt. 364, in which Mr. Justice CURTIS held expressly that the purpose of the writer not to have the letter go to its apparent destination did not affect its character, or take it out of the protection of the statute. "If," says Mr. Justice HARLAN, "it had appeared in that case that the letter was not intended to be conveyed by post at all, it is obvious that he would have held that no conviction could be had;" and that is evidently the gist of his decision in the *Case of Matthews*. Like all the cases previously cited, it is readily distinguishable from the one under consideration in the important and essential fact that the letter was never intended to be conveyed at all. We regard the words "intended to be conveyed by mail" or carrier as simply descriptive of the character of the letter as mailable matter, and are satisfied by evidence that the letter was so conveyed before or after it reached the hands of the defendant.

A single consideration remains to be discussed. Did the inspector exceed his authority in putting the money into the envelope in such a way as to apprise defendant that the letter probably contained an article of value? In the note to *Bates* v. *U. S.*, 10 Fed. Rep. 97, to which allusion has already been made, it is said that, if an employé be suspected of stealing money, "I may mark money, and have it exposed in such a way as to attract his attention; and if he steal it, and if he subsequently be presented for larceny, he cannot defend on the ground that a trap was laid for him,"—and a number of authorities are cited in support of the proposition. Defendant relies in this connection upon the case of *Saunders* v. *People*, 38 Mich. 218. No such point, however, was decided in this case; but two judges expressed the opinion that the conduct of a policeman in leaving the court-room door unlocked, so that the prisoner could get certain papers that he desired, was indefensible. This opinion, however, is in direct conflict with that of *Rex* v. *Egginton*, 2 Bos. & P. 508; *Reg.* v. *Lawrance*, 4 Cox, Crim. Cas. 438; *Reg.* v. *Johnson*, Car. & M. 218; and with *Reg.* v. *Williams*, 1 Car. & K. 195. We think that no obstacle should be thrown in the way of the detection of crime that does not amount to a practical inducement or solicitation to commit it.

The true doctrine in respect to larceny is thus stated by Chitty, (3 Crim. Law, 925:) If the owner, in order to detect a number of men in the act of stealing, directs a servant to appear to encourage the design, and leads them on until the offense is complete, so long as he did not induce the original intent, but only provided for its discovery after it was formed, the criminality of the thieves will not be destroyed. 4 Bl. Comm. 230, note; 2 Whart. Crim. Law, § 1859; 1 Bish. Crim. Law, § 344; *Alexander* v. *State*, 12 Tex. 540.

Both motions are overruled.