## M. J. JARROTT V. THE STATE.

No. 10108.   Delivered October 5, 1927.

Rehearing denied January 11, 1928.

**1.—Theft—Possession and Consent of Owner to Theft—Rule Stated.**

In this case Officer Griffin was informed by one Voss that appellant was engaged in the stealing of automobiles and had invited Witness Voss

to join him in the theft of a Ford coupe. To detect and apprehend the thief, Officer Griffin placed his car, a Ford coupe, in a certain place, concealing himself in the rear of same, and appellant and Witness Voss shortly thereafter drove the car away and attempted to sell it in Bowie, when appellant was arrested by Griffin.

### 2.—Same—Continued.

Under these facts appellant contends that Griffin, being in the car at all times, it was never, in fact, out of his possession, and having placed the car at a certain place, where he knew it would be stolen, he gave his consent to the taking, and therefore, two essential elements of theft, want of consent of the owner and appropriation, are not shown.

### 3.—Same—Continued.

One who takes property of another into his complete possession, with the intent to fraudulently appropriate same, may be guilty of theft, even though he does not remove same from the premises of the owner. Following Rodriques v. State, 71 S. W. 596; Tarrango v. State, 44 Tex. Crim. Rep. 385, and Harris v. State, 29 Tex. Crim. Rep. 101. Distinguishing Clark v. State, 59 Tex. Crim. Rep. 246, and other cases cited. See illustrative cases cited in original opinion.

### 4.—Same—Continued.

Where a fraudulent intent. to steal property is formed on the mind of a person, who afterward takes possession of the property with intent to appropriate it, and such intent is not incited or imposed by the owner or some one acting for him, the fact that the owner has knowledge of such purpose and intent, and for the purpose of detecting the thief, places his property at a place where he knows it will be appropriated, such acts on the part of the owner do not show consent on his part to the taking. See Connor v. State, 24 Tex. Crim. App. 245, and other cases cited and illustrative in original opinion.

### 5.—Same—Requested Charge—On Accomplice Testimony—Properly Refused.

When a person, acting under instructions from officers, engages with another in the theft of an automobile, and does nothing to incite his principal to commit such theft, or to form the intent to commit it, he is not an accomplice and there was no error in the refusal of the court to charge the jury in this case that Voss was an accomplice.

### ON REHEARING.

### 6.—Same—Consent to Taking—Rule Stated.

"Where the criminal design originates with the accused, and the owner or his agent does not suggest the design, nor actively urge the commission of the crime, the mere fact that the owner, suspecting the accused, exposes or causes the property to be exposed, neglects to protect it, or furnishes facilities for the execution of the criminal design, will not amount in law to a consent, although the agent or servant, by the instructions of the owner, appears to co-operate in the execution of the crime. See Sanchez v. State, 48 Tex. Crim. Rep. 591, and other authorities cited in opinion on rehearing.

Appeal from the District Court of Montague County.   Tried below before the Hon. Vincent Stine, Judge.

Appeal from a conviction for theft of an automobile, penalty five years in the penitentiary.

The opinion states the case.

*Chancellor & Bryan* of Bowie, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for felony theft, punishment five years in the penitentiary.

From a certain locality in the city of Wichita Falls, Texas, a number of cars had been stolen recently before a man named Voss came to the officers with the story that this appellant had several times approached him with a proposal that he aid appellant in stealing cars, claiming that they would net $75.00 each from every car taken, and that appellant specified that he wanted to get a 1925 coupe, which Voss learned appellant wished to steal that night.   After conference with the officers Voss was instructed to go on with appellant in the transaction, the plain purpose of his continuance in which being that appellant might be detected and apprehended as a car thief.   Later in the day Voss got more specific information from appellant as to the time of the contemplated theft, which information he communicated to Officer Griffin, who had been detailed on the case.   At about 11 o'clock that night Griffin had a service car man to convey a Ford coupe belonging to Griffin, and in the back of which he had concealed himself, to about the locality from which the other cars referred to had been stolen.   Said coupe was left with its dimmers on and the key in the switch.   Griffin had told Voss that he would have a car up there with the lights burning and that he would be in the back end of it.   Voss testified on the trial that appellant told him to meet him at 11 o'clock that night, and that he met appellant about that time and was asked by him if he was ready to go.   They walked up Eighth Street and appellant said: "There is a good car with the lights burning."   Voss replied that there was some one in the car, to which appellant said: "No, there is not."   They first looked, then got in the car and drove off.   Appellant told Voss that

he could not drive a car, and Voss accordingly drove under appellant's direction down various roads through Henrietta and Ringgold to Bowie, and to a certain garage in Bowie where appellant left to bring a purchaser. While appellant was gone the officer got out of the back end of the car. Appellant presently came back with one Ezra Williams, and while they were haggling as to the price Williams should pay for the car, Officer Griffin arrested them.

On these facts appellant contends that Voss was an accomplice; that Griffin gave his consent to the taking of the car; that it never was taken from Griffin's possession; that because of these facts the evidence does not support the conviction.

Appellant, in his able brief, presents first the proposition that the car at no time passed from the personal possession of the owner, and further, that Voss was the agent of said owner, and as such had the care, control and management of the car, and that the car never passed out of Voss' personal possession. Appellant cites Clark v. State, 59 Tex. Crim. Rep. 246; People v. Meyer, 75 Cal. 383, 17 Pac. 431, and Herr v. State, 105 S. W. 190. In these cases the property attempted to be taken was attached to other property of the owner from which attachment there was no severance at any time. This point is discussed in Rodriques v. State, 71 S. W. 596; Tarrango v. State, 44 Tex. Crim. Rep. 385; Harris v. State, 29 Tex. Crim. App. 101. We do not regard the doctrine of these cases as applicable here. One who takes the property of another into his complete possession, with intent to fraudulently appropriate same, may be guilty of theft, even though he does not remove same from the presence or premises of the owner. Illustrative cases are Harris v. State, 29 Tex. Crim. App. 101; Files v. State, 36 Tex. Crim. Rep. 206; Conner v. State, 24 Tex. Crim. App. 245; Robinson v. State, 34 Tex. Crim. Rep. 71; Allison v. State, 14 Tex. Crim. App. 122; Crowder v. State, 50 Tex. Crim. Rep. 92. It is specifically stated in Art. 1412 of our Penal Code that property need not be moved out of the presence of the owner in order that its taking be theft, nor need it be moved any distance or kept by the thief any length of time, but it is enough that same be in the possession of such thief. It would seem entirely beyond dispute that one might take the property of another into his possession, so as to make his act theft, even though in the presence of the owner and on his premises, without further

removal of such property—if such taking be without the knowl-
edge of such owner. It would also seem plain that a thief might
take an automobile in which the owner was, into his possession
and remove same with the intent to fraudulently appropriate it
and be indisputably guilty of theft if the taking was without
the knowledge of such owner. These statements are made to
make evident the proposition that the taking of property into
the possession of the thief, which was also in the presence and
with the owner's knowledge, would be theft, unless such taking
under such circumstances should be held to be a taking with
the owner's consent. In other words, an inspection of the
authorities above referred to show clearly that this court has
frequently held that one charged with theft may acquire that
character of possession necessary to constitute his taking theft,
even though the property be not removed from the presence of
its owner, and even though the taking be with the knowledge
of the owner, but that the question is whether it was taken
with the owner's consent, and this brings us to appellant's next
contention, viz.: that the car of Griffin was taken with his
consent directly, or with the consent of his agent, and hence
there was no theft.

We have read this record with much care and think it is
made plain that Griffin did not consent to any appropriation
of his car by appellant, nor to any taking of same further than
was deemed necessary to apprehend and detect the thief. We
might state it thus: That what Griffin did, or what Griffin and
Voss did, was for the sole purpose of detecting appellant in
the theft of said car. The fact that in order to conclusively
establish the fraudulent intent to appropriate the car, it was
deemed necessary to permit such removal to a point where a
prospective purchaser of the car from appellant appeared, would
not seem to affect the question of consent, which is under dis-
cussion. Cases upon this point are many in this state and
others. In Conner v. State, 24 Tex. Crim. App. 245, two horses
were hobbled at a certain point. A witness swore that these
horses had been placed in his hands to be used as decoys in
the detection of appellant for horse theft. This witness said
the horses were on their accustomed range, but were hobbled
there to enable defendant to steal them under an arrangement
with one Nickel to apprehend the accused in the act. Nickel
was the pretended confederate of appellant who had tipped off
the officers that Conner wanted him to aid in stealing horses

and selling them.   Nickel was a party to the arrangement by which the horses were placed where he and Conner found them that night, and which horses he and Conner were in the act of taking when they were arrested.   The defense in that case was that the horses were taken with the consent of the owner. This court held that there was no consent, basing its conclusion on the proposition that the owner of the horses neither directly nor indirectly suggested the theft to Conner.   The same point appears in Robinson v. State, 34 Tex. Crim. Rep. 71; Crowder v. State, 50 Tex. Crim. Rep. 92; Tones v. State, 48 Tex. Crim. Rep. 363; Thompson v. State, 18 Ind. 386; State v. Abley, 109 Iowa, 61; State v. Stickney, 53 Kan. 308; Duncan v. Com., 85 Ky. 614; State v. Sneff, 22 Neb. 481; State v. Currie, 13 N. D. 655; Varner v. State, 72 Ga. 745; McAdams v. State, 8 Lea. 456. In the early case of Alexander v. State, 12 Texas, 540, we find the following statement:

"It is further objected that the court erred in refusing to instruct the jury, in substance, that if the owner of the slave gave him his consent to go into the possession of the prisoner, and he did so with the knowledge and consent and by the direction of the owner; and if when the prisoner was arrested, the negro 'was impressed and influenced by and abided under the controlling will of his master, and was not subject to that of the defendant, there could be no larceny.' * * *

"It will not be pretended that the owner of the negro intended that the theft should be consummated; he intended only to detect and catch the thief, without affording him the opportunity to consummate his purpose.   And the law, applicable to the case, is well illustrated by the following example: 'If the owner, in order to detect a number of men in the act of stealing, directs a servant to appear to encourage the design, and lead them on until the offense is complete, so long as he did not induce the original intent, but only provided for its discovery, after it was formed, the criminality of the thieves will not be destroyed.' (3 Chit. Cr. L. 925, 4 Bl. Com. 230, note.)"

This case has often been approved.   So also in Pigg v. State, 43 Texas, 108, where the doctrine is laid down that the owner of property who for the purpose of detecting the thief, obtains the aid of a detective who joins the thief in the theft, said theft being designed and originated by the accused, there is no consent of the owner.   In that case the record showed that Christian

and others suspected Pigg and Smith of stealing horses, and requested Snyder to get into their confidence, which he did, and they told Snyder they were going to take Christian's horses. Snyder agreed to engage with them in the theft and was present and acting with them when they took the horses out of the stable. The Supreme Court, discussing a charge given, quoted same as follows:

"The state must show that the gelding was taken without the consent of the owner; and upon this point I instruct you that if Christian, the alleged owner, by himself or by some one acting for him, by words or acts, suggested or induced defendant, or those with him, when he may have acted in an original intent or design to steal the gelding, and having induced such original intent, he, or the person acting for him, acted as one of the party throughout, that is, in the original intent to steal, and in the acts resulting in theft, then in such case the want of consent would not be established, and the defendant should be acquitted. If, however, on the other hand it shall appear that the intent to steal the gelding originated with the defendant, or those with whom he acted, and that Christian, or no one acting with him, induced or suggested such original intent, but only used means intended to detect and catch the thief, without affording him an opportunity to consummate his purposes, or to provide for its discovery after such intent was formed by the defendant or those with whom he may have acted, and such intent so formed was not suggested or induced by Christian, or any one for him, and his consent was not actually obtained, then in such case the crime would be complete, so far as want of consent is concerned." The charge was held correct.

So also in Johnson v. State, 3 Tex. Crim. App. 590, a charge was given that if the original intent to commit the offense was not influenced or suggested by the detective, the agreement of the detective to enter the conspiracy would not excuse the defendant; but if the detective suggested the offense and in any way created the original intent and agreement to commit same, there should be an acquittal. In Crowder v. State, 50 Tex. Crim. Rep. 92, this court said:

"If an owner of property in order to detect a thief directs another person to apparently encourage the thief's design, and lead him on, and the act is consummated, it would be theft, provided the owner or his agent did not induce the original

intent on the part of the thief. Alexander v. State, 13 Texas, 936; Pigg v. State, 43 Texas, 110; Conner v. State, 24 Tex. Crim. App. 250; McGee v. State, 66 S. W. 562; State v. McAfee, 50 S. W. 83 (Mo.); U. S. v. Whittier, 5 Dill, 35, 40 Fed. cases, 16, 688; U. S. v. Wight, 38 Fed. 111. See also 81 Am. Dec., 366, note."

This seems to be the general doctrine applicable. It is discussed at length in the notes to Butts v. U. S., 18 L. R. A. 143. Citing many authorities, it is said in said notes that where the criminal design originates in the mind of the accused, it is no defense that the agent of the owner pretended to cooperate with the accused.

We think the rule correct and applicable and that the undisputed evidence in the case before us shows that the criminal suggestion of the theft of the cars came from appellant; that he first proposed the scheme to Voss, and that what Voss and Griffin thereafter did and said was done wholly for the purpose of apprehending appellant as the thief, and that hence there was no consent.

The cases of Speiden v. State, 3 Tex. Crim. App. 156; Magee v. State, 66 S. W. 562, and Bird v. State, 49 Tex. Crim. Rep. 98, are distinguishable upon this very point, the commission of the offense being first suggested and originated in those cases by the owners or officers. The proposition that appellant originated the suggestion of the theft of cars is in nowise disputed in this record. Nor is it questionable that what was thereafter said and done by Voss and the officers had for its only purpose the pretended aiding of appellant in order that he might be apprehended as the thief. . There is no suggestion that this case is one in which a citizen, possibly honest, was induced by some over-zealous officer or owner to engage in a criminal enterprise, but on the contrary it is a case of a man who had made repeatedly similar overtures prior to the instant transaction and who renewed the overtures and suggested the theft of a Ford coupe that night. We attach no importance to the fact that on the witness stand Voss and Griffin made statements in response to the cross-examination which, on their faces, might lend color to appellant's contention that the car was driven away by Voss with the consent of Griffin, and that Griffin placed his car there with knowledge of the fact that it was likely to be taken by appellant or appellant and Voss. We do not think such testi-

mony affects the principle involved or the rule applicable. The trial judge charged the jury as follows:

"In order to warrant a conviction in this case you must find beyond a reasonable doubt that the automobile in question was taken without the consent of the owner. You are therefore instructed that if you believe from the evidence that the witness, Vernon Voss or Clarence Griffin, the alleged owner of the car, induced the defendant to steal the car, if the same was stolen, and that the intent and purpose to steal the car, if there was such intent and purpose, originated with and was suggested by the said Voss or Griffin or if you have a reasonable doubt thereof it would be a taking with the consent of the owner, Clarence Griffin, and you should acquit the defendant and say by your verdict 'not guilty.'

"If, however, you believe from the evidence that the owner of the property in order to detect the defendant in committing the offense of theft of his property directed the said Voss to apparently encourage the defendant's design, if there was such, and lead him on and the offense of theft as charged is consummated, as defined to you in the court's charge, there would be no consent to the taking of the property and it would be theft, so far as the want of consent is concerned, provided neither the owner, Clarence Griffin or the witness, Vernon Voss, induced the original intent, if there was same, on the part of the defendant.

"You are further instructed in order to constitute the offense of theft in this case, it is necessary that you find from the evidence that the defendant deprived the said Clarence Griffin of the possession (as that term has been heretofore defined to you), of said automobile, and if you do not so find you will acquit the defendant and say by your verdict 'not guilty'."

This, we think, correctly submitted the issue of consent *vel non* to the jury, which was by them decided adversely to appellant.

Appellant also insists that Voss was an accomplice, and that the court below erred in not so charging the jury, and in the refusal of special charges seeking to have the jury so told. We are not able to believe under the authorities that Voss was an accomplice, or that there was any testimony raising the issue. Appellant introduced no testimony, and under all the facts Voss

did not originate the taking or suggest the same, but on the contrary it is beyond dispute that the suggestion came from appellant, and that appellant was present and participated in and directed the taking of the car and its removal and disposition. On the question of accomplice in such case see Wright v. State, 7 Tex. Crim. App. 574; Freeman v. State, 11 Tex. Crim. App. 92; Allison v. State, 14 Tex. Crim. App. 122; Minter v. State, 70 Tex. Crim. Rep. 645; Smith v. State, 89 Tex. Crim. Rep. 145.

We do not think the court erred in declining to tell the jury that Voss was an accomplice, or in refusing to submit to them that issue. To become an accomplice Voss must have united with appellant or aided or encouraged him with a common design to commit theft.

Appellant makes complaint of the refusal of an application for continuance made because of the fact that this case was set down for trial only two days before the end of the term of court. Under the showing made appellant agreed to the setting, but later became fearful that he would not have time to make up the proper record or to properly preserve his rights if convicted, in the limited time left after trial. The bill of exceptions complaining of this matter is qualified. No showing is made of any injury, and we perceive none shown in the record.

Being unable to agree with any of the contentions made by appellant, the judgment will be affirmed.

*Affirmed.*

The facts of this case are so unique an exact precedent is not likely to be discovered. It may be my brethren have reached a correct conclusion; however, there being some doubt in my mind whether the car ever went out of the owner's possession, I do not wish to commit myself unreservedly on that proposition.

HAWKINS, *Judge.*

ON MOTION FOR REHEARING.

MARTIN, JUDGE.—Appellant again contends in a vigorous motion for rehearing that the court erred, particularly in its opinion that there was proof of lack of consent of the owner of the car or that same was ever in law out of the possession of its owner.

We have again carefully reviewed the authorities, which confirms us in the opinion that the original disposition of this case was correct. The rule with reference to consent in cases of this character has been stated as follows:

"But where the criminal design originates with the accused, and the owner or his agent or servant does not suggest the design nor actively urge the commission of the crime, the mere fact that the owner, suspecting the accused, in person or through his servant or agent exposes the property, neglects to protect it, or furnishes facilities for the execution of the criminal design, under the expectation that the accused will take the property or avail himself of the facilities furnished, will not amount in law to a consent, although the agent or servant, by the instructions of the owner, appears to co-operate in the execution of the crime." 17 R. C. L. 50.

This rule is supported by many cases, among them being Sanchez v. State, 48 Tex. Crim. Rep. 591. The Sanchez case is also authority for the previous holding that Voss was not an accomplice.

It seems plain that an owner may be personally present with his property and yet its possession be in a thief within the legal meaning of the term possession. The question is whether the thief physically and actually possesses it, not whether at a moment's notice the owner is in a position to repossess himself of it. In this case Voss, in driving the car, was in such capacity acting as appellant's agent and the two actually had physical possession and control of it, though the owner was secretly present.

Appellant's motion is overruled.                    *Overruled.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.