

# IN THE
# TENTH COURT OF APPEALS

### No. 10-17-00104-CR

**JEREMY DEASHUN BROWN JR.,**

                                                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                                    **Appellee**


**From the 82nd District Court**
**Falls County, Texas**
**Trial Court No. 9569**


## MEMORANDUM OPINION


In one issue, appellant, Jeremy Brown Jr., challenges the sufficiency of the evidence

supporting his conviction for theft of cattle in an amount less than $100,000, a third-

degree felony. *See* TEX. PENAL CODE ANN. § 31.03(e)(5)(A) (West Supp. 2017). Because we

conclude that the evidence is insufficient to support appellant's conviction, we reverse

the judgment of the trial court and render a judgment of acquittal.

# I. BACKGROUND

Here, appellant was charged by indictment with the offense of theft of cattle in an amount less than $100,000. *See id.* Appellant pleaded "not guilty," and this matter proceeded to trial. The jury ultimately found appellant guilty of the charged offense. The trial court assessed punishment at ten years' incarceration in the Institutional Division of the Texas Department of Criminal Justice, suspended the sentence, and placed appellant on community supervision for ten years with a $2,500 fine. The trial court also certified appellant's right of appeal, and this appeal followed.

# II. SUFFICIENCY OF THE EVIDENCE

In his sole issue on appeal, appellant contends that the evidence supporting his conviction is insufficient. Specifically, appellant argues that the record shows that the offense of theft of cattle was completed hours before he was purportedly involved; as a result, the record does not establish that he was a party to the charged offense.

## A. Applicable Law

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to

resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's

theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

To prove the offense of theft, the State must prove beyond a reasonable doubt that a person "unlawfully appropriate[d] property with the intent to deprive the owner of the property." TEX. PENAL CODE ANN. § 31.03(a); *see Torres v. State*, 466 S.W.3d 329, 334 (Tex. App.—Houston [14th Dist.] 2015, no pet.). "An appropriation of property is unlawful if it is without the owner's effective consent." *Torres*, 466 S.W.3d at 334 (citing TEX. PENAL CODE ANN. § 31.03(b)(1)). Moreover, "[a]ppropriate" means "to acquire or otherwise exercise control over property other than real property." TEX. PENAL CODE ANN. § 31.01(4)(B) (West Supp. 2018); *see Hawkins v. State*, 214 S.W.3d 668, 670 (Tex. App.—Waco 2007, no pet.).

Here, the jury was provided an instruction on the law of parties. According to the law of parties, each party to an offense may be charged with the commission of the offense. TEX. PENAL CODE ANN. § 7.01(b) (West 2011). A person is a party to an offense if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (West 2011). When a party is not the "primary actor," the State must prove conduct constituting an offense plus an act by the defendant along with the intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985). Evidence may be deemed sufficient to sustain a conviction under the law of parties if the

evidence shows that the defendant was physically present at the commission of the offense and encouraged the commission of the offense either by words or other agreement. *Miller v. State*, 83 S.W.3d 308, 313-14 (Tex. App.—Austin 2002, pet. ref'd) (citing *Urtado v. State*, 605 S.W.2d 907, 911 (Tex. Crim. App. 1980); *Tarpley v. State*, 565 S.W.2d 525, 529 (Tex. Crim. App. 1978)). Circumstantial evidence may suffice to show that a person is a party to the offense. *Id.* (citing *Wygal v. State*, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977)).

While mere presence at the scene, or even flight, is not enough to sustain a conviction, such facts may be considered in determining whether a person was a party to the offense. *Id.* at 314 (citing *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981) (op. on reh'g); *Guillory v. State*, 877 S.W.2d 71, 74 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd)). Moreover, in determining whether a person participated in an offense as a party, the factfinder may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the person that show an understanding and common design to commit the offense. *See Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (op. on reh'g); *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985); *see also Frank v. State*, 183 S.W.3d 63, 72 (Tex. App.—Fort Worth 2005, pet. ref'd).

**B.      Discussion**

In the instant case, the record evidence details an attempt to steal cattle from Henry Kelly.  Andre Houston testified that he was leaving from a rodeo in Centerville, Texas, on March 27, 2015.  While "head[ing] back down Highway 7 to Highway 6 to go to Stephenville," Andre saw "some cows on the left-hand side on County Road 245."  Andre pulled over and closed the gate where Kelly kept his cattle.[1]  Andre then called "a buddy of mine" to "tell him about what [he] had going on, that [he] had penned some cows up."  After speaking with his buddy, Andre learned that appellant's father, Jeremy Brown Sr., also known as J.D., wanted some cows.  Andre later testified that when he shut the gate, he intended to come back and steal Kelly's cattle so that he could sell the cattle to J.D.

Later that night, Andre called his friend Allen "Noonie" Pickney Jr., who lived four houses down from Andre in Houston, Texas.  According to Noonie, Andre stated that he needed help "with some horses."  Andre also informed Noonie that appellant's father, J.D., would pick up Noonie outside his house.  J.D. arrived in a black, flatbed pickup truck.  Inside the pickup truck was J.D., appellant, and another person that Noonie did not recognize.  The group then traveled to a Shell gas station to meet Andre. At the time of the meeting, Andre was driving a white Dodge 2500 pickup truck with

---

[1] Kelly testified that the cattle were not in a normal location when Andre closed the gate.  Kelly also denied placing the cattle in the pen area on the date in question and noted that he left the gate open so the cattle could come and go because there was no water source in the area where Andre penned up the cattle.

dually wheels. Noonie recalled seeing J.D. and appellant talking to Andre at the Shell gas station.

Subsequently, the group, now in two pickup trucks, drove from the Houston area toward Marlin, Texas. Along the way, Andre stopped at a dance hall in Spring, Texas, so that he could steal a pickup truck. The guy that Noonie did not recognize drove the stolen pickup truck toward Marlin; however, this vehicle was pulled over by law enforcement due to "smoking because of the brakes." Neither the mysterious driver nor the stolen pickup truck had any further involvement in this matter. Nevertheless, Andre's group, which did not include appellant, later stopped at a hotel and stole a dirt bike off of someone's trailer. Throughout the journey from Houston to the scene of the cattle rustling, Andre called J.D. numerous times to discuss plans.

The two groups eventually met up in Marlin. It was at this time that the individuals decided to steal a livestock trailer from the Marlin High School FFA. Andre testified that appellant and Noonie assisted in the stealing of the livestock trailer. While appellant and Noonie were hooking up the livestock trailer to Andre's pickup truck, Andre and J.D. moved the stolen dirt bike onto J.D.'s flatbed. After doing so, the groups drove down Highway 7 until they reached Kelly's property.

Andre recalled the following regarding their arrival at Kelly's property:

We pull out—we pull out here to where the pen is. This is the chute. Over here is the access county road. This is Highway 7. I pull up here, trying to back the trailer up to the gate right here (indicates). Noonie gets out and tries to get the cows up into the smaller chute. This is a loading pen right

here (indicates). But I have some bigger pens, and that's where I penned the cows up.

. . .

And the trailer goes over more over this way. And I thought I was backing up to this. Then I pulled up and tried to do it again, go over this way, and that's when I called Jeremy Brown [J.D.] and told him I need somebody to come and back up the trailer. And then he said he was going to send his son [appellant]. Then he pulls off and goes down there to turn around, and that's when a Ford truck pulls up.

Clay Little, the driver of the Ford pickup truck, stated that he was driving by the area to check on cattle that may have escaped the fences. Little testified that he saw a black, Dodge pickup truck with dirt bike on the truck's flatbed driving slowly on the shoulder of Highway 7. He then saw a white, Dodge pickup truck with a Gooseneck Marlin High School FFA trailer hooked up to it in the ditch trying to back up. Little pulled up to the white, Dodge pickup truck to see what was going on; however, after seeing the lights from Little's pickup truck, Andre disconnected the trailer, got into the truck, and sped away, leaving Noonie behind.

Noonie ran and hid in a tree for a little while.[2] Later, he walked along the highway until he came to a house. The homeowner allowed Noonie to make a couple of telephone calls. Noonie acknowledged that he called Andre, J.D., and appellant to come pick him

---

[2] Initially, Noonie crouched behind some bushes while holding a lit flashlight. Little rolled down his window and shouted, "I can still see you." Noonie then jumped the fence, ran away, and hid in a tree.

up; however, law enforcement apprehended Noonie before Andre, J.D., or appellant could.

Law enforcement eventually arrived and secured the scene. The abandoned Marlin High School FFA trailer obstructed the roadway, causing traffic to back up on Highway 7. J.D., appellant, and Andre, now all riding together in J.D.'s pickup truck, returned to the scene of the crime and drove quickly along the shoulder of the highway to bypass the traffic. Due to J.D.'s poor attempt at remaining inconspicuous, Little recognized J.D.'s pickup truck as it drove along the shoulder of the highway.

On appeal, appellant argues that the evidence supporting his conviction for theft of cattle is insufficient because the theft was complete when Andre "closed the gate on the cattle, containing them in an area." We agree.

A theft is complete when all the elements have occurred. *Anderson v. State*, 322 S.W.3d 401, 408 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Barnes v. State*, 824 S.W.2d 560, 562 (Tex. Crim. App. 1991), *overruled on other grounds by Proctor v. State*, 967 S.W.2d 840, 842 (Tex. Crim. App. 1998)). As noted above, a theft occurs when (1) property is (2) unlawfully appropriated (3) by someone (4) with intent to deprive the owner of that property. TEX. PENAL CODE ANN. § 31.03. Moreover, theft is not a continuing offense, meaning it does not continue as long as the actor retains control of the stolen property. *Anderson*, 322 S.W.3d at 408 (citing *Barnes*, 824 S.W.2d at 562; *Cupit v. State*, 122 S.W.3d 243, 246 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd)).

Additionally, this Court has noted that "asportation—the act of carrying away or removing property—is not an element of statutory theft." *Hawkins*, 214 S.W.3d at 670.

Here, Andre went onto Kelly's property and closed the gate to pen up the cattle; at this point, Andre exercised control over and, thus, appropriated the cattle. *See id.*; *see also id.* § 31.01(4); *Hawkins*, 214 S.W.3d at 670. Moreover, Kelly's testimony that the cattle were not in a normal location when Andre penned them up further demonstrates the appropriation, although it is not necessary for the property to be removed any distance to constitute a taking. *See Baker v. State*, 511 S.W.2d 272, 272 (Tex. Crim. App. 1974) ("[R]emoval of the property from the premises is not necessary for commission of the offense of theft. Removal of the object from its customary location is sufficient to show such reduction of control or manual possession as is required."); *but see Hawkins*, 214 S.W.3d at 670 (noting that asportation—the act of carrying away or removing property— is not an element of statutory theft) (citing *Barnes v. State*, 513 S.W.2d 850, 851 (Tex. Crim. App. 1974); *Jarrott v. State*, 108 Tex. Crim. 427, 1 S.W.2d 619, 621 (1927); *Prim v. State*, 32 Tex. 157, 157 (1869); *Harris v. State*, 29 Tex. Ct. App. 101, 14 S.W. 390, 391 (1890)).

Additionally, Andre testified that when he closed the gate, he intended to steal, or otherwise deprive Kelly of, the cattle. *See* TEX. PENAL CODE ANN. § 31.03(a); *see also Hawkins*, 214 S.W.3d at 670. Accordingly, we conclude that Andre's act of closing the gate to pen up Kelly's cattle satisfied all of the elements of theft. *See* TEX. PENAL CODE ANN. § 31.03(a). And because theft is not a continuing offense, we further conclude that the theft

of Kelly's cattle was completed when Andre penned up the cattle. *See Barnes*, 824 S.W.2d at 562; *Barrera v. State*, 163 Tex. Crim. 132, 137, 289 S.W.2d 285, 288 (1956) ("It was immaterial that the cattle were removed from and returned to the owner's pasture. Having placed his ear mark on all of the stolen cattle and his brand upon some of them, theft of the cattle was complete."); *see also Anderson*, 322 S.W.3d at 408; *Cupit*, 122 S.W.3d at 246. This is important with regard to the subsequent acts taken by appellant and others in the attempt to transport the stolen cattle from Kelly's property.

Acts committed after the offense is completed cannot make appellant a party to the offense. *See Morrison v. State*, 608 S.W.2d 233, 235 (Tex. Crim. App. 1980) ("Acts committed after the robbery was completed could not make appellant a party to the offense. The circumstances must prove some culpable act before or during the robbery." (internal citation omitted)); *Pesina v. State*, 949 S.W.2d 374, 383 (Tex. App.—San Antonio 1997, no pet. ("One's acts committed after the offense is completed cannot make him a party to the offense. Standing alone, proof that an accused assisted the primary actor after the commission of the offense is insufficient, although the accused's conduct may constitute the independent offense of hindering apprehension or prosecution." (internal citations omitted))[3]; *see also United States v. Figueroa-Cartagena*, 612 F.3d 69, 75 (1st Cir.

---

[3] We also note that the Legislature eliminated the old classification of accessory after the fact and replaced it with section 38.05, which created a separate crime of "hindering apprehension or prosecution." *See* TEX. PENAL CODE ANN. § 38.05 (West 2016); *Navarro v. State*, 863 S.W.2d 191, 201 (Tex. App.—Austin 1993, pet. ref'd); *see also Sanchez v. State*, 2005 Tex. App. LEXIS 5084, at *11 (Tex. App.—Austin June 30, 2005, no pet.).

2010), cert. denied, 131 S. Ct. 2930, 180 L. Ed. 2d 227 (2011) (noting that "an individual who arrives on the scene after the offense conduct has ended cannot be held liable as an aider and abettor"). Therefore, because the unlawful appropriation of Kelly's cattle was completed when Andre penned up the cattle, appellant cannot be convicted under a hypothetically-correct jury charge in this case, as the conviction cannot stand as being authorized by the indictment. *See Sanchez v. State*, 376 S.W.3d 767, 772 (Tex. Crim. App. 2012); *see also Malik*, 953 S.W.2d at 239.

Accordingly, even viewing the evidence in the light most favorable to the jury's verdict, we conclude that the jury could not have rationally found appellant guilty of the charged offense in this case; as such, we hold that the evidence is insufficient to demonstrate that appellant was a party to the theft of cattle. *See* TEX. PENAL CODE ANN. §§ 7.01(b), 7.02(a)(2), 31.03; *Morrison*, 608 S.W.2d at 235; *Barrera*, 163 Tex. Crim. at 137, 289 S.W.2d at 288; *Hawkins*, 214 S.W.3d at 670; *Pesina*, 949 S.W.2d at 383. We therefore sustain appellant's sole issue on appeal.

### III. CONCLUSION

If we find the evidence insufficient, as is the case here, then a judgment of acquittal must be rendered. *See Tibbs v. Florida*, 457 U.S. 31, 41, 102 S. Ct. 2211, 2218, 72 L. Ed. 2d 652 (1982); *see also Skillern v. State*, 355 S.W.3d 262, 270 (Tex. App.—Houston [1st Dist. 2011, pet. ref'd) (citing *Roberson v. State*, 80 S.W.3d 730, 742 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)). Given that we have sustained appellant's sufficiency challenge,

we hereby reverse the judgment of conviction and render a judgment of acquittal. *See*

*Tibbs*, 457 U.S. at 41, 102 S. Ct. at 2218; *see also Skillern*, 355 S.W.3d at 270; *Roberson*, 80

S.W.3d at 742.


AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
(Chief Justice Gray concurring with a note)*
Reversed and rendered
Opinion delivered and filed November 7, 2018
Do not publish
[CR25]

*(Chief Justice Gray concurs in the Court's judgment of acquittal of the offense as charged. A separate opinion will not issue. He notes, however, that the offense charged included "appropriation" only under Texas Penal Code Section 31.03(b)(1) and not section 31.03(b)(2). Moreover, even if the defendant had been indicted under 31.03(b)(2), the evidence appears to support, at best, attempted theft as the evidence to support an appropriation under Texas Penal Code 31.01(4) by the defendant is weak, even under the law of parties.)

