JOSE BARRERA V. STATE

No. 28,151. March 21, 1956.
Appellant's Motion for Rehearing Denied
(Without Written Opinion) May 2, 1956.

*Jack Wiech* and *Sharpe, Cunningham & Garza,* Brownsville, for appellant.

*F. T. Graham,* Criminal District Attorney, Brownsville, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is cattle theft; the punishment, two years.

This case presents one of the most novel fact situations to reach this court in some time. This decision has been a difficult one, but much help has been afforded by the scholarly briefs and arguments. Counsel for the state and the accused conducted themselves throughout the investigation and prosecution of this case in such a manner as to bring credit to our profession.

Appellant was a young constable in Cameron County and was engaged in ranching. Across the highway from his ranch lay the ranch of Cueto, the injured party, who resided in the city of Brownsville. Because he did not reside on his ranch, Cueto began to look to the appellant for help and gave the appellant the keys to his gates. It was appellant's testimony at the trial that Cueto had imposed upon him through constant requests for aid in emergencies with his cattle. Be this as it may, the appellant began stealing Cueto's cattle during the year of 1952. As he appropriated each animal, the appellant would either brand it with his brand or mark its ear with his mark. The appellant never sold or slaughtered any of Cueto's cattle. Because the fences of each ranch were in poor condition and because of the appellant's activities, the herds soon got badly intermingled. There were some of Cueto's cattle bearing the appellant's brand or mark in the appellant's pasture, and in Cueto's pasture might be found some of appellant's cattle and some of Cueto's cattle bearing the appellant's brand or mark which had returned to their accustomed range.

On December 3, 1953, the appellant voluntarily went to Austin accompanied by one of his lawyers, the district attorney,

and several peace officers from Cameron County to take the polygraph test in connection with another matter which the officers were then investigating. After their arrival, it was decided by the officers that they wanted to question the appellant in connection with the loss of Cueto's cattle. The district attorney called another of appellant's attorneys in Brownsville and got permission to interrogate the appellant concerning the cattle, and it was agreed in writing that the operator's findings at the conclusion of the test would be admitted without objection by either the state or the appellant if any prosecutions against the appellant were instituted. The appellant was interrogated concerning Cueto's cattle, denied any guilty knowledge, and the polygraph operator's findings were that he was not being truthful. The party returned to Brownsville and dispersed. A few days after their return the appellant confessed orally to Deputy Sheriff Keller that he had stolen some of Cueto's cattle, and, together with Cueto, they began the process of identifying Cueto's cattle in the appellant's pasture.

On December 10, 11, and 13, 1953, they were able to locate 23 head and turn them over to Cueto. On December 14, the appellant went to the office of his attorney and there made a confession that he had stolen 43 head of Cueto's cattle, and this confession was placed in the hands of the district attorney. On December 16, 1953, the grand jury of Cameron County indicted the appellant for the theft of 9 head of cattle from Cueto on November 14, 1952. No complaint had been filed prior to the return of the indictment.

The remaining 21 head of the 43 mentioned in the confession were later found in both the appellant's and Cueto's pastures and were turned over to the owner.

No effort was made to bring the indictment to trial.

On February 9, 1955, after further investigation by Cueto the appellant signed the following statement:

"My name is Jose Barrera, I am 27 years of age and I reside at Port Isabel, Texas, where I was born. On this the 9th day of February, 1955, I came to Mr. Cueto's residence at 243 East Levee Street, Brownsville, Texas, to make the following confession voluntarily without any threats or force or any promises of reward or mitigation for my wrongdoings. Therefore, I wish to make the following statement in the presence of Mr. A. Cueto, Jr. and Mr. Walter Keller:

"That my statement made December 14, 1953, to the Cameron County Attorney, through my attorney, Mr. Reynaldo Garza, was not a complete statement and now I wish to make a complete statement and relieve my mind of the worry I have been going through.

"In my previous confession I stated that I had stolen 43 head of cattle from Mr. A. Cueto, Jr., same being the number I returned to Mr. A. Cueto, Jr. between December 10th, 1953 and January 20th, 1954. I therefore now wish to return to Mr. A. Cueto, Jr. all of the cattle which I still hold and stole from him and to furnish him with an itemized list on or before February 15th, 1955."

Following this, 69 additional cattle were returned to Cueto, the appellant transferred his brand to Cueto, and Cueto promised not to prosecute the appellant.

In July, 1955, this case was set down for trial.

Upon the trial, the appellant plead guilty before the court, admitted the truth of the first confession, and denied that he had read the second, but stated that he had signed it at the request of Officer Keller.

The state was in no position to prove the dates of any of the thefts. The indictment charged 9 head because the appellant's original confession contained this expression, "The biggest bunch that I took out at one time was nine * * *."

The appellant, testifying in his own behalf, stated that he had taken the 9 head in April or May, 1953, and had placed them in the brush in his pasture, that a few days later he had noticed them at the fence near the highway, that he had driven them back into the brush but that when they again returned to the fence he put them back into Cueto's pasture.

When asked if he returned the cattle to the Cueto pasture because he feared their presence near the fence would lead to detection, he answered, "No, I just figured they might come out on the highway and cause an accident or something and I put them back with no intention of ever getting them out."

It is upon this testimony that he claims the trial court erred in failing to assess his punishment in accordance with the terms of Article 1424, V.A.P.C., which reads as follows:

"If property taken under such circumstances as to constitute theft be voluntarily returned within a reasonable time, and before any prosecution is commenced therefor, the punishment shall be a fine not exceeding one thousand dollars."

Assuming that the appellant's testimony is true, one salient fact stands out: Each of the 9 head of cattle *upon which this conviction rests* bore the appellant's mark or brand, and the appellant did not confess his guilt or relinquish the claim which his mark or brand asserted to the world until after he knew he was being investigated for the theft of the cattle.

With that fact in mind, we approach a discussion of the holdings of this court on the question before us.

In Moore v. State, 8 Tex. App. 596, we find the following: "To entitle the thief to the mitigated penalty for a voluntary return of the stolen property within a reasonable time, the reurn must be actual * * * and not a clandestine return and constructive redelivery of the property."

In Bird v. State, 16 Tex. App. 528, we said:

"We deduce from the decisions upon this question, and from the statute itself, that a voluntary return of stolen property, within the meaning of the Article of the Code cited, must be under the following circumstances:

"1. It must be voluntary, that is, willingly made; not made under the influence of compulsion, threats or fear of punishment. If, however, it be made under the influence of repentance for the crime, and with a desire to make reparation to the injured owner, it will be voluntary, although it may also be influenced by fear of punishment.

"2. It must be made within a reasonable time after the theft and before prosecution for the theft has been commenced.

"3. It must be an *actual* and not merely a *constructive* return of the property into the possession of the owner.

"4. The property returned must be the identical property, *unchanged* and all of it, that was stolen." (Italics ours.)

Prosecution is commenced by the filing of a complaint or the return of an indictment. Garlington v. State, 141 Tex. Cr. Rep. 596, 150 S.W. 2d 253; 12 Tex. Jur. 382, sec. 108 (Criminal Law) ; 5 Words & Phrases (Permanent Ed.) 281.

Under the statute, however, the return must not only be made before prosecution is begun but must be made voluntarily. When the stolen property has been found in possession of the accused and he is aware of such fact, or when he has been detected as the thief, it is too late to make a voluntary return. Elkins v. State, 35 Tex. Cr. Rep. 206, 32 S.W. 1046; Petty v. State, 59 Tex. Cr. Rep. 586, 129 S.W. 615.

It was immaterial that the cattle were removed from and returned to the owner's pasture. Having placed his ear mark on all of the stolen cattle and his brand upon some of them, theft of the cattle was complete. Coward v. State, 24 Tex. App. 590, 7 S.W. 332; Davis v. State, 79 Tex. Cr. Rep. 2, 182 S.W. 1126.

Under the decisions, all of the stolen property must be returned unchanged, and a constructive return or a return of like property, or changed property, will not suffice. Bird v. State, supra.

In view of these and many other expressions of this court, we are forced to the conclusion that the act of returning the 9 head of cattle to the Cueto pasture bearing the appellant's brand or mark, without anything more, did not consttiute such a return as to entitle the appellant to the benefits of the statute. These cattle were not *unchanged;* they had been marked or branded. If there was a return, it was to the *constructive* rather than *actual* possession of Cueto. If Cueto was unfamiliar with his cattle, as he appears to have been, or had he died, nothing would have prevented the appellant from later claiming the cattle on the basis of the marks or brands. He had not told Cueto or any other witness that he was laying no claim to these 9 head, which bore his brand or mark, until after he was questioned by the officers about the theft of Cueto's cattle.

Finding no reversible error, the judgment of the trial court is affirmed.