Clarence W. HANEY, Appellant,

v.

The STATE of Texas, State.

No. 2–96–586–CR.

Court of Appeals of Texas, Fort Worth.

May 21, 1998.

Rehearing Overruled July 2, 1998.

Sheila R. Randolph, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Asst. Dist. Atty. and Chief of the Appellate Division, Donald J. Piller, Kevin Rousseau, Deborah Kernan, Asst. Dist. Attys., Fort Worth, for Appellee.

## OPINION

CAYCE, Chief Justice.

### I. INTRODUCTION

A jury found appellant, Clarence W. Haney, guilty of aggravated sexual assault of a child and indecency with a child and sentenced him to life in prison on both counts. In ten points, appellant complains that the trial court erred in denying his motion to set aside the prosecution for the State's violation of his right to a speedy trial; that the trial court erred in allowing the introduction of multiple extraneous offenses pursuant to article 38.37 of the Texas Code of Criminal Procedure because appellant was indicted before that statute took effect; and that the evidence is insufficient to support a finding that appellant is guilty of indecency with a child in Tarrant County. We will affirm.

### II. BACKGROUND FACTS

Appellant began sexually abusing R.H., the daughter of his then-girlfriend, M.H., in January 1992, when the couple resided in Amarillo. The abuse continued after their marriage and through June 1992 when appellant moved M.H. and R.H. and her brother to Tarrant County. On July 29, 1992, after

already having abused R.H. four or five times since the move to Tarrant County, appellant took R.H. to a park and attempted to have oral and anal sex with her. That night, R.H. told her mother about the frequent abuse. Her mother contacted the police and left appellant.

Appellant was arrested on August 26, 1992 and indicted on September 24, 1992 on charges of sexual assault and indecency with a child. The State announced ready the same day of the indictment. A year passed without trial and, on October 18, 1993, appellant filed a motion in limine covering extraneous offenses. Four months later, on February 24, 1994, appellant filed a motion for speedy trial. On September 6, 1994, he was sent to prison in an unrelated case. Tarrant County did not place a detainer on him and, on January 12, 1995, he was released on mandatory supervision to Potter County where he lived with his father. On July 25, 1995, after realizing appellant was not in jail, Tarrant County issued an arrest warrant for appellant. The warrant was not executed until March 30, 1996 when appellant was arrested in Albuquerque, New Mexico. On June 25, 1996, appellant filed a motion to set aside the prosecution for violation of his right to a speedy trial. On August 26, 1996, the trial court heard and denied appellant's motion to set aside the prosecution, granted appellant's original motion for speedy trial, and granted appellant's motion in limine. Appellant's trial began immediately afterwards.

## III. SPEEDY TRIAL CLAIM

■ Appellant's first point alleges the trial court erred in denying his motion to set aside the prosecution for violation of his right to a speedy trial. The Sixth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment, guarantees the right to a speedy trial. *See Klopfer v. North Carolina,* 386 U.S. 213,

223–24, 87 S.Ct. 988, 993–94, 18 L.Ed.2d 1, 8 (1967).[1] To determine whether an accused has been denied the right to a speedy trial, the trial court employs the balancing test first enunciated in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 116–17 (1972). *Barker* dictates that a trial court must consider four factors: 1) length of the delay; 2) reason for the delay; 3) defendant's assertion of the right; and 4) prejudice to the defendant resulting from that delay. *Id.*

### A. Standard of Review

■ This court recently held that "we must conduct the *Barker* balancing test de novo." *Clarke v. State,* 928 S.W.2d 709, 713 (Tex.App.—Fort Worth 1996, pet. ref'd) (op. on reh'g). The court of criminal appeals has subsequently agreed that de novo review is the proper standard when reviewing a trial court's ruling on a motion for speedy trial. *See Johnson v. State,* 954 S.W.2d 770, 771 (Tex.Crim.App.1997). Therefore, we will review this case de novo.

### B. *Barker* Analysis

#### 1. Length of the Delay

Under *Barker,* the trial court must first measure the length of the delay. Although no specific length of time triggers a speedy trial analysis, the court of criminal appeals has noted that some courts presume that a delay of eight months or longer is prejudicial. *See Harris v. State,* 827 S.W.2d 949, 956 (Tex.Crim.App.), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). In other cases, delays of three to four years have been upheld as not violating a defendant's right.[2] *See Phipps v. State,* 630 S.W.2d 942, 946 (Tex.Crim.App. [Panel Op.] 1982); *Swisher v. State,* 544 S.W.2d 379, 381 (Tex.Crim.App.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977).

---

1. The Texas Constitution also guarantees the right to a speedy trial, but appellant only complains of a violation of his federal right. *See* Tex. Const. art. I, § 10. The test applied under both the state and federal constitutions is the same. *See Hull v. State,* 699 S.W.2d 220, 221 (Tex.Crim. App.1985); *Russell v. State,* 598 S.W.2d 238, 248

(Tex.Crim.App.), *cert. denied,* 449 U.S. 1003, 101 S.Ct. 544, 66 L.Ed.2d 300 (1980).

2. No specific guidelines have been adopted since the court of criminal appeals overturned the Texas Speedy Trial Act. *See generally Meshell v. State,* 739 S.W.2d 246 (Tex.Crim.App.1987).

■ In the instant case, appellant was indicted on September 24, 1992. He filed his motion for speedy trial on February 24, 1994, but his trial did not begin until August 26, 1996. While the State asserts that the relevant period for consideration is approximately three years because appellant was not in custody for parts of 1995 and 1996, it concedes that this delay triggers a speedy trial analysis.

## 2. Reason for the Delay

Once a court determines that the length of the delay triggers a speedy trial analysis, it is the State's burden to show an adequate reason why the delay should be excused. *See Phillips v. State*, 650 S.W.2d 396, 400 (Tex.Crim.App.1983); *Turner v. State*, 545 S.W.2d 133, 137–38 (Tex.Crim.App.1976). In discussing this prong, the *Barker* Court stated:

> [D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

*Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

■ In the case before us, the State announced ready the same day appellant was indicted, but trial was postponed and reset nine separate times. Then, two years after indictment, appellant was released without detainer from the Tarrant County Jail to serve prison time on an unrelated case. Another two years passed before appellant was finally brought to trial. The State offers no excuse for this delay other than appellant's evasive actions and docket congestion. However, appellant did not evade arrest until three years after he was indicted, and an overcrowded docket does not justify a three-year delay in bringing a case to trial. *See Clarke*, 928 S.W.2d at 714. Accordingly, the State did not meet its burden of showing an

excuse for the delay, and the delay weighs against the State.

## 3. Assertion of the Right

■ The third factor that a trial court must consider under *Barker* is the defendant's assertion of his right to a speedy trial. Assertion of the right is entitled to strong evidentiary weight. *See Barker*, 407 U.S. at 531–32, 92 S.Ct. at 2192–93, 33 L.Ed.2d at 117–18. However, a lengthy delay or lack of persistence in asserting the right attenuates a speedy trial claim. *See Emery v. State*, 881 S.W.2d 702, 709 (Tex.Crim.App.1994), *cert. denied*, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995); *Clarke*, 928 S.W.2d at 714; *Santallan v. State*, 922 S.W.2d 306, 308 (Tex.App.—Fort Worth 1996, pet. ref'd).

Appellant filed his motion for a speedy trial approximately eighteen months after his arrest. During this eighteen-month period, the case was continued and reset for trial four times without a complaint from appellant. After his motion for speedy trial was filed, the case was continued without objection five more times. Appellant did not file his motion to dismiss until approximately two years and four months after he moved for a speedy trial.

Appellant asserts that he requested hearings on his motion for speedy trial and his motion to dismiss in the motions themselves, and that those requests were sufficient assertions of his right. He also explains that the delay in filing his motion to dismiss resulted from a belief that the charges had been dropped.

■ Upon reviewing the evidence, we find that appellant did not pursue his right to a speedy trial in a timely manner, or with sufficient persistence and aggressiveness. Appellant has an affirmative duty to pursue his legal rights with some degree of diligence; he cannot rely entirely on the overloaded criminal justice system to protect those rights. For these reasons, we find that appellant's failure to diligently assert his right to a speedy trial weighs in favor of the State.

#### 4. Prejudice Caused by the Delay

 The fourth *Barker* factor that the trial court must consider is prejudice to the defendant caused by the delay. Trial delay can be harmful in three ways: 1) pretrial incarceration may be oppressive; 2) the accused may be unduly subjected to anxiety and concern; or 3) the accused's defense may be impaired. *See Barker,* 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. The mere passage of time is not prejudicial in itself and will not, standing alone, result in a violation of the right to a speedy trial. *See Oliver v. State,* 731 S.W.2d 149, 160 (Tex.App.—Fort Worth 1987, pet. ref'd).

 It is the defendant's burden to make a prima facie showing of prejudice. *See Clarke,* 928 S.W.2d at 716. Once the defendant does so, it is the State's obligation to prove "the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Ex parte McKenzie,* 491 S.W.2d 122, 123 (Tex.Crim. App.1973); *see also Clarke,* 928 S.W.2d at 716.

Appellant points to two specific claims of prejudice occasioned by the delay: 1) he spent three and one-half years in custody while the case was pending; and 2) a possible impeachment witness, his grandmother, died in February of 1994 while the case was pending. We find no merit to either claim of prejudice.

 Although appellant endured a lengthy pretrial incarceration and may have suffered some anxiety, neither of these facts amounts to a violation of his right to a speedy trial under the facts of this case. As the State points out, appellant spent four months in jail on another charge, and for more than a year lived as a free man because of the State's failure to put a detainer on him.

 Additionally, appellant's claim that his deceased grandmother may have been used as an impeachment witness amounts to nothing more than mere speculation. Appellant testified his grandmother could have testified on his behalf about "things that [R.H.] had told her about the offense," and been "available as a witness to possibly impeach the outcry witness, [M.H.]." In order to show prejudice caused by lost testimony, appellant must show that the testimony would have been "relevant and material" to the defense, i.e., favorable. *Clarke,* 928 S.W.2d at 716. We consider the lost testimony in light of the strength of the State's case as a whole. *See McCarty v. State,* 498 S.W.2d 212, 218 (Tex.Crim.App. 1973).

 While conversations between R.H. and appellant's grandmother may have been relevant, appellant presents no evidence that the grandmother knew anything about the case or ever had a conversation with R.H. about the case. Appellant failed to show the alleged conversations were material, that his defense hinged on his grandmother's testimony, or even that her testimony would have been favorable. In addition, M.H. did not testify at trial so the grandmother's alleged value as an impeachment witness is moot. Finally, whatever the substance of appellant's grandmother's testimony, it could not overcome R.H.'s graphic testimony and the overwhelming evidence against appellant. Thus, appellant's inability to call his grandmother as a witness at trial does not serve as prima facie evidence that the delay prejudiced appellant's defense.

 To sum up, we find that two *Barker* factors weigh in favor of appellant—length of the delay and reason for the delay—and that two *Barker* factors weigh in favor of the State—assertion of the right and prejudice. In *Clarke,* however, we held, "[w]hen the failure to assert the right is made so late and never heard until trial, it weakens all the other factors because they are so dependant upon the assertion." *Clarke,* 928 S.W.2d at 718. We find that appellant's failure to timely assert his right to a speedy trial weighs heavily against him and weakened all other factors dependent on the assertion of the right. We, therefore, hold that the trial court did not err in denying appellant's speedy trial claim. Appellant's first point is overruled.

### IV. ARTICLE 38.37 CLAIM

Appellant complains in points two through nine that the trial court erred in applying

article 38.37 of the Texas Code of Criminal Procedure to allow R.H. to testify about eight separate extraneous acts of sexual abuse that occurred between January 1992 and July 1992 in Amarillo and Borger, Texas.[3] Appellant urges that article 38.37 applies only to criminal prosecutions that are commenced on or after September 1, 1995, the statute's effective date, and that the statute did not apply to his case because he was indicted in 1992.[4] In response, the State contends that the statute applies to any "proceeding" that occurred after the statute's September 1, 1995 effective date, even if the proceeding arose out of a criminal prosecution that began before the statute went into effect, and that the statute was applicable to appellant's trial because it occurred in 1996. Thus, the issue before us is whether article 38.37 was intended to apply to a trial or other proceeding that arose out of a criminal prosecution that began *prior to* the statute's effective date, or whether the statute was intended only to apply to proceedings in a criminal prosecution that began *on or after* the statute's effective date. In determining this issue, we must decide whether the legislature intended the term "criminal proceeding" contained in the enacting provision of article 38.37 to mean a criminal prosecution, which includes all the steps between official accusation and final judgment, or whether the term was intended to refer to any single, isolated proceeding or procedural phase encompassed within a criminal prosecution.

The enacting provision of article 38.37 is contained in section 48(b) of the 1995 Act. This provision states:

Article 38.37, Code of Criminal Procedure, as added by this section, applies to any *criminal proceeding that commences on or after the effective date of this Act, regardless of whether the offense that is the*

---

3. Appellant does not complain that the trial court erred in admitting evidence of extraneous offenses under any other rule of procedure or evidence. Nor does appellant argue that the trial court erred in construing article 38.37 once it was deemed applicable to appellant's case. Thus, we limit our discussion solely to the narrow issue of whether article 38.37 should have been applied in the first instance.

*subject of the proceeding was committed before, on, or after the effective date of this Act.*

Act of May 29, 1995, 74th Leg., R.S., ch. 318, § 48(b), 1995 Tex. Gen. Laws 2734, 2749 (emphasis supplied). Further, the text of article 38.37 provides, in pertinent part:

Sec. 1. *This article applies to a proceeding in the prosecution* of a defendant for an offense under the following provisions of the Penal Code, if committed against a child under 17 years of age:

(1) Chapter 21 (Sexual Offenses);

(2) Chapter 22 (Assaultive Offenses);

(3) Section 25.02 (Prohibited Sexual Conduct);

(4) Section 43.25 (Sexual Performance by a Child); or

(5) an attempt or conspiracy to commit an offense listed in this section.

Sec. 2. Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:

(1) the state of mind of the defendant and the child; and

(2) the previous and subsequent relationship between the defendant and the child.

TEX.CODE CRIM. PROC. ANN. art. 38.37 (Vernon Supp.1998) (emphasis supplied).

The terms "criminal proceeding" and "proceeding" have been recently defined by the court of criminal appeals. In *Tigner v. State*, 928 S.W.2d 540, 544–46 (Tex.Crim.App.1996), the court specifically held that the term "criminal proceeding" as used in article 38.22, section 3(a),[5] was *not* synonymous with "pro-

---

4. Appellant also objected to the evidence on grounds that it was irrelevant, an attempt to use character evidence to show conformity, and prejudicial.

5. Article 38.22, section 3(a) states:

Sec. 3. (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a *criminal proceeding* unless:

ceeding," which the court defined as a single, isolated phase within a criminal prosecution, but rather was intended to mean "criminal prosecution." *See id.* Rejecting the State's argument that the legislature intended that "criminal proceeding" be interpreted as referring to proceedings such as a "trial on the merits," the court said:

> The State contends, nevertheless, that its interpretation of "proceeding" must be sustained if the term is read in conjunction with the phrase "criminal proceeding" as it appears in Article 38.22 § 3(a). The State begins its argument by postulating that "proceeding" is an abbreviated reference to the phrase "criminal proceeding" found in Article 38.22 § 3(a). The State then argues that the Legislature intended to extend "criminal proceeding" to only those phases of a criminal prosecution at which the oral statement "shall be admissible against the accused." Since the oral statement of an accused cannot be utilized against the accused during voir dire, the State argues, voir dire is not a "criminal proceeding."

In addressing this argument, we again observe that the Legislature's word selection was very broad, conceivably extending to all phases of a criminal prosecution. Black's Law Dictionary defines "criminal proceeding" as: "Strictly, a 'criminal proceeding' means some step taken before a court against some person or persons charged with some violation of the criminal law." *Black's Law Dictionary* 374 (6th ed.1990). The State again attempts to liken "criminal proceeding"—a phrase which is facially very broad—to "trial on the merits." However, if the legislative purpose was to confine the application of Article 38.22 § 3(a) to a "trial on the merits,"

then the use of broad terminology failed to promote such an intent.

Indeed, even assuming, *arguendo*, the State's contention that the term "criminal proceeding" is confined to those procedural phases in which the oral statement is admissible against a defendant, such analysis leaves unanswered the issue of what the Legislature meant by "proceeding."

*Id.* at 544–45; *see also Yzaguirre v. State*, 957 S.W.2d 38, 41–42 (Tex.Crim.App.1997) (Overstreet, J., dissenting) ("This criminal proceeding commenced on May 19, 1995 when the indictments were returned.... Had [counsel] had a competent grasp of the applicable law, he would have pointed out to the trial court that Article 38.37 was inapplicable to the proceeding at hand, as it did not take effect until September 1, 1995.").

Since *Tigner*, at least two sister courts have held that a "criminal proceeding" includes all phases of a prosecution for the purpose of determining the applicability of article 38.37. *See Snellen v. State*, 923 S.W.2d 238, 241 (Tex.App.—Texarkana 1996, pet. ref'd) (holding that, for purposes of article 38.37, a "criminal proceeding" begins "with the grand jury's indictment"); *Yzaguirre v. State*, 938 S.W.2d 129, 131 (Tex.App.—Amarillo 1996) (stating that defendant's "criminal proceeding," for purposes of article 38.37, "commenced with the return of the indictments"), *rev'd on other grounds*, 957 S.W.2d 38 (Tex.Crim.App.1997). *But see Howland v. State*, 966 S.W.2d 98, 101–02 (Tex.App.—Houston [1st Dist.] no pet. h.) (holding a "criminal proceeding" is a single step in a prosecution). The court in *Snellen* said:

> The Legislature has since amended the Code of Criminal Procedure to allow evidence of the defendant's and the child's

---

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

(2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;

(4) all voices on the recording are identified; and

(5) not later than the 20th day before the date of the *proceeding*, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

TEX CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (Vernon Supp.1998) (emphasis supplied).

states of mind and of the subsequent relationship between the defendant and the child. *This amendment applies to any criminal proceeding that commences on or after the amendment's effective date, September 1, 1995. It does not apply here because this prosecution began with the grand jury's indictment on April 5, 1995, before the amendment's effective date.*

*Snellen,* 923 S.W.2d at 241 (citations omitted) (emphasis supplied).

The State directs us to language in the body of the statute that reads "[t]his article applies to a *proceeding in the prosecution*" and posits that this language is evidence of legislative intent to make the statute applicable to any "proceeding" in a criminal prosecution that occurs after the statute's effective date, regardless of the date the prosecution began. While this argument may be superficially appealing, it fails to give meaning and effect to the distinct term "criminal proceeding" used in the enacting provision of the statute, and thus violates the guiding standard of statutory interpretation that we must presume the legislature intended *every* word and phrase of a statute to have meaning and effect. *See Morter v. State,* 551 S.W.2d 715, 718 (Tex.Crim.App.1977).

We presume, as did the court of criminal appeals in *Tigner* when faced with a similar question, that in drafting article 38.37 the legislature intended the terms "criminal proceeding" and "proceeding" to have distinct meanings; that is, "criminal proceeding" was meant to refer to a criminal prosecution, and "proceeding" was meant to refer to the single, isolated procedural phases encompassed within a criminal prosecution. *Tigner,* 928 S.W.2d at 544–45. If the legislature's intent was to confine the term "criminal proceeding" to the proceedings that make up a criminal prosecution "then the use of broad terminology failed to promote such an intent." *Id.* at 545. Moreover, assuming "criminal pro-

ceeding" does refer to any proceeding in a criminal prosecution, then what is meant by the phrase "proceeding in a prosecution"? If both "criminal proceeding" and "proceeding in a prosecution" are intended to have identical meanings, as the State suggests, why did the legislature use different terminology to convey that meaning when it could have easily used the same language throughout the statute? The State offers no adequate answers to these questions.

■ We conclude that the term "criminal proceeding" as used in article 38.37 means a criminal prosecution encompassing all the steps between official accusation and final judgment. We therefore hold that the trial court abused its discretion in admitting the complained of extraneous testimony under article 38.37 because appellant's criminal prosecution began before the effective date of the statute, *see Barrera v. State,* 163 Tex. Crim. 132, 289 S.W.2d 285, 288 (1956) (a prosecution begins with the filing of a complaint or the return of an indictment), and the statute only applies to criminal prosecutions that began on or after its effective date. This interpretation is faithful to the literal meaning of the statutory language, gives full meaning and effect to the different words and phrases used in the statute, and best advances the purpose and intent of the legislature.

■ Appellant does not claim that the trial court's error is of a constitutional magnitude, nor do we find that it is. Thus, whether the trial court's error is reversible depends upon whether the error affected appellant's "substantial rights." Tex.R.App. P. 44.2(b).[6] A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Coggeshall v. State,* 961 S.W.2d 639, 643 (Tex.App.—Fort Worth 1998, pet. ref'd) (en banc). The harm,

---

6. Appellant claims this case should be "reversed pursuant to Tex.R.App. Pro. 81(b)(2)." However, the court of criminal appeals has ordered us to apply the new Rules of Appellate Procedure in all proceedings pending on and after September 1, 1997, unless it "would not be feasible or would work injustice" in cases then pending. Order of the Court of Criminal Appeals of Texas,

Final Approval of Revisions to the Texas Rules of Appellate Procedure (August 15, 1997). This case was pending when the new rules of appellate procedure became effective. We find that application of the new rules of appellate procedure is feasible and will not work an injustice. Thus, we will apply Tex R.App. P. 44.2(b) in this case.

if any, suffered by improperly admitted evidence may be defused by properly admitted evidence. *See King,* 953 S.W.2d at 273.

Appellant contends that he was harmed by the admission of the extraneous offenses because R.H. disclosed more "gruesome" details about the sexual assaults that occurred in Amarillo and Borger than she did regarding the assaults that occurred in Tarrant County. Additionally, he claims he was harmed when the State's closing argument referenced R.H.'s testimony that appellant forced her to rub his penis until he ejaculated because she did not state that he made her do that in Tarrant County. We disagree.

The evidence in this case shows that during the time appellant and R.H. were in Amarillo and Borger appellant sexually abused her by taking her to secluded places and then putting lotion in her hand and making her rub his penis until he ejaculated, by forcing her to suck on his penis, and by trying to put his penis in her vagina and her "butt." It further shows that when they moved to Tarrant County appellant continued this pattern of abuse. R.H. testified that appellant repeatedly sexually assaulted her by taking her to a park and forcing his penis into her vagina, her mouth, and her anus; by penetrating her vagina with his finger; by placing his mouth on her genitals; and by forcing her to suck on his penis.

Additionally, Terri Cook, a registered nurse, performed an assault exam on R.H. on August 8, 1992 and testified that during the exam R.H. told her that "[appellant] has been touching my private parts.... He did it a bunch of times. I can't name how many. He tried to put his private in my private. It hurt me. But he couldn't get it in. I saw white stuff come out of his private. The last time it happened was about two weeks ago." The exam revealed positive signs of trauma to R.H.'s genitals consistent with sexual molestation.

■ Having reviewed the entire record, we find that the error did not improperly influence the jury's verdict. Contrary to appellant's contention, we find that the extraneous offense evidence was not more "gruesome" than the evidence revealing the sexual abuse R.H. suffered in Tarrant County. The fact that R.H. did not state that appellant forced her to rub his penis until he ejaculated in Tarrant County is not significant in light of the overwhelming evidence of appellant's guilt. We hold, therefore, that the error did not affect a substantial right of appellant and must be disregarded. *See* TEX.R.APP. P. 44.2(b). We overrule points two through nine.

## V. INSUFFICIENCY CLAIM

■ Appellant claims in his tenth point that the evidence is insufficient to find him guilty of indecency with a child under Count 2 of the indictment. As a preliminary matter, we address the issue of whether appellant, by merely claiming the evidence is "insufficient," has failed to raise a factual sufficiency point. We may only consider the factual sufficiency of the evidence if the issue is "properly raised." *Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App. 1996); *see also Roper v. State,* 917 S.W.2d 128, 132 (Tex.App.—Fort Worth 1996, pet. ref'd) (dictum). A factual sufficiency point is not properly raised where, as here, the appellant only challenges the evidence as "insufficient" and cites *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), the seminal case on legal sufficiency. *See Davila v. State,* 930 S.W.2d 641, 648 (Tex.App.—El Paso 1996, pet. ref'd); *see also Martinets v. State,* 884 S.W.2d 185, 189 (Tex.App.—Austin 1994, no pet.). We conclude appellant has not raised a factual sufficiency issue and proceed with a review of the legal sufficiency.

In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *See Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Emery,* 881 S.W.2d at 705. This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw

reasonable inferences from basic facts to ultimate facts. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.

Legal sufficiency is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *See Matson,* 819 S.W.2d at 846.

Appellant complains that, although the evidence presented was sufficient to find him guilty of the basic elements of indecency with a child in Amarillo and Borger, Count 2 of the indictment alleged a specific venue, Tarrant County, and a specific manner and means, causing R.H. to touch his genitals, for which no evidence was presented. Count 2 of the indictment reads:

> AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT THE SAID DEFENDANT IN THE COUNTY OF TARRANT AND STATE AFORESAID ON OR ABOUT THE 29 TH DAY OF JULY, 1992, DID THEN AND THERE INTENTIONALLY, WITH THE INTENT TO AROUSE AND GRATIFY THE SEXUAL DESIRE OF SAID DEFENDANT, ENGAGE IN SEXUAL CONTACT WITH [R.H.], A CHILD YOUNGER THAN 17 YEARS AND NOT THE SPOUSE OF THE DEFENDANT BY CAUSING [R.H.] TO TOUCH THE GENITALS OF THE DEFENDANT[.]

■ The State introduced ample evidence that appellant repeatedly abused R.H. after the family moved to Fort Worth, which is located in Tarrant County, Texas. This evidence included R.H.'s testimony that appellant put his finger in her vagina, put his penis in her mouth, put his mouth on her

genitals, forced her to suck on his penis and, on July 29, 1992, "tried to put his penis in my vagina and my butt." Yet, appellant claims no specific evidence was introduced that he "caused" R.H. to "touch the genitals of the defendant" on or about July 29, 1992.

■ We find that the evidence presented to the jury is more than sufficient to support a jury finding that appellant "caused" R.H. to "touch the genitals of the defendant" "on or about the 29 th day of July, 1992." Moreover, even if the evidence concerning the night of July 29, 1992, was insufficient, this court has held that proof is sufficient if it is shown "the offense occurred on a date anterior to the presentment of the indictment but within the statutory limitations period." *Sledge v. State,* 903 S.W.2d 105, 107 (Tex.App.—Fort Worth 1995), *aff'd,* 953 S.W.2d 253 (Tex. Crim.App.1997). Here, multiple, similar indictable offenses occurred within days of the offense in question. We overrule appellant's tenth point.

## VI. CONCLUSION

Having overruled all of appellant's points, we affirm the judgment of the trial court.

LIVINGSTON, J., filed a concurring opinion in which BRIGHAM, J. joins.

LIVINGSTON, Justice, concurring.

Although I concur in the result, I write separately because I believe that article 38.37 of the Texas Code of Criminal Procedure was properly applied in appellant's case. TEX. CODE CRIM. PROC. ANN. art. 38.37 (Vernon Supp.1998). The majority seizes on the enacting legislation of article 38.37 [1] to conclude that "the term 'criminal proceeding' as used in article 38.37 means a criminal prosecution encompassing all the steps between official accusation and final judgment." However, section 1 of article 38.37 clearly states:

> Sec. 1. This article applies to **a proceeding in the prosecution** of a defendant

---

1. The enacting legislation provides:
 Article 38.37, Code of Criminal Procedure, as added by this section, applies to any **criminal proceeding** that commences on or after the effective date of this Act, regardless of whether the offense that is the subject of the proceeding

was committed before, on, or after the effective date of this Act.
Act of May 29, 1995, 74 th Leg., R.S., ch. 318, § 48(b), 1995 Tex. Gen. Laws 2734, 2749 (emphasis added).

for an offense under the following provisions of the Penal Code, if committed against a child under 17 years of age:

(1) Chapter 21 (Sexual Offenses);

(2) Chapter 22 (Assaultive Offenses);

(3) Section 25.02 (Prohibited Sexual Conduct);

(4) Section 43.25 (Sexual Performance by a Child); or

(5) an attempt or conspiracy to commit an offense listed in this section.

*Id.* (emphasis added).

The majority acknowledges that the statute itself states that it applies to a "proceeding in a prosecution." However, under the guise of the law of statutory interpretation—"we must presume the legislature intended *every* word and phrase of a statute to have meaning and effect"—the majority implicitly holds that the term "criminal proceeding" used in the enacting legislation overrides, or supercedes, the plain language of the statute. The majority finds support for this proposition in *Tigner v. State,* 928 S.W.2d 540, 544 (Tex.Crim.App.1996), a case that was specifically limited to the interpretation of "proceeding" in the context of article 38.22 of the Texas Code of Criminal Procedure as opposed to article 38.37.[2] *Id.* at 546 (holding applies to term "proceeding" in section 3(a)(5) of article 38.22).

In *Tigner,* the Texas Court of Criminal Appeals examined the phrase "proceeding" in connection with article 38.22 and likened a "criminal proceeding" to a criminal prosecution. *Id.* at 543–46. However, unlike article 38.22, article 38.37 expressly differentiates between a "proceeding" and a "prosecution." Thus, in effect, the majority would read the statute as stating that "[t]his article applies to a proceeding in a proceeding." This could not have been the intended result of the legislature and, more importantly, the result ignores the majority's own rule of statutory construction—that "we must presume the

legislature intended *every* word and phrase of a statute to have meaning and effect." *See Morter v. State,* 551 S.W.2d 715, 718 (Tex.Crim.App.1977). In contrast, my interpretation of the statute follows another longstanding tradition of statutory construction, namely that language be *construed* by the literal meaning of the words. *See Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App. 1991). In addition, to limit the term "proceeding" in the statute to only one continuous event ignores the enabling legislation itself, which directs us to apply the revised rule **regardless of when the offense took place.** *See* Act of May 29, 1995, 74[th] Leg., R.S., ch. 318, § 48(b), 1995 Tex. Gen. Laws 2734, 2749.

The majority finds support for its interpretation from two sister appellate courts that have held that the date of the indictment controls the applicability of article 38.37. *See Snellen v. State,* 923 S.W.2d 238, 241 (Tex. App.—Texarkana 1996, pet. ref'd) (holding that, for purposes of article 38.37, a "criminal proceeding" begins "with the grand jury's indictment"); *Yzaguirre v. State,* 938 S.W.2d 129, 131 (Tex.App.—Amarillo 1996) (stating that defendant's "criminal proceeding," for purposes of article 38.37, "commenced with the return of the indictments"), *rev'd on other grounds,* 957 S.W.2d 38 (Tex.Crim.App. 1997). However, neither *Snellen* nor *Yzaguirre* provide credible support for their conclusions. The court in *Yzaguirre* provides no reason for its determination and the court in *Snellen* simply likened the word "proceeding" to the word "prosecution" in finding that only one proceeding occurs in a given case. *See Snellen,* 923 S.W.2d at 241. As stated above, the argument in *Snellen* flies in the face of section 1 of article 38.37, which clearly states, "[t]his article applies to a proceeding in the prosecution of a defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1. Thus, at the risk of being redundant, the rule itself expressly distinguishes between a "proceed-

---

**2.** The relevant portion of article 38.22 states, in part:

Sec. 3. (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a **criminal proceeding** unless:

. . . .

(5) not later than the 20th day before the date of the **proceeding,** the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(5) (Vernon Supp.1998).

ing" and a "prosecution" in a way that implies there can be more than one proceeding in a given case. *See id.*

The Houston [1st] court recently seized on the plain language of the statute to reach the same conclusion. *See Howland v. State,* 966 S.W.2d 98, 101–03 (Tex.App.—Houston [1st Dist.], no pet.). The *Howland* court distinguished *Tigner* and pointed out the overt weaknesses in *Snellen* and *Yzaguirre* in finding that the enacting legislation was clear and ambiguous and that its interpretation did not create an absurd result. *See Id.* at 101–03. The *Howland* court found additional support for its conclusions in *Hinds v. State,* 970 S.W.2d 33, 35 (Tex.App.—Dallas, no pet.), a case where the Dallas appellate court applied article 38.37 in a similar situation without discussion. For all these reasons, I believe article 38.37 was applicable to appellant's case and the trial court did not abuse its discretion in allowing evidence of appellant's extraneous offenses.

BRIGHAM, J., joins in this opinion.

