# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00793-CR

---

**Chineme Reginald Ogbuehi, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 22ND DISTRICT COURT OF COMAL COUNTY
### NO. CR2022-102B, THE HONORABLE TRACIE WRIGHT-RENEAU, JUDGE PRESIDING

---

### O P I N I O N

Chineme Reginald Ogbuehi was charged with two counts of bail jumping and failure to appear. *See* Tex. Penal Code § 38.10. The indictment also contained an enhancement paragraph alleging that he had previously been convicted of the felony offense of robbery.[1] *See id.* §§ 12.42, 29.02. At the end of the guilt-innocence phase, the jury found him guilty of the charged offenses. Ogbuehi elected to have the trial court assess his punishment, and the trial court found the enhancement allegation to be true and imposed a fifteen-year sentence for each count. In his pro se brief and reply brief, Ogbuehi challenges the sufficiency of the evidence supporting his convictions. We will affirm the trial court's judgments of conviction.

---

[1] The indictment contained two enhancement allegations, but the State withdrew one of the enhancement allegations during the punishment phase of the trial.

# BACKGROUND

As set out above, Ogbuehi was charged with two counts of bail jumping and failure to appear. The indictment alleged that he had been previously charged with tampering with physical evidence and theft with two or more convictions for the same offense, that he had been lawfully released from custody with or without bail on the condition that he subsequently appear in the trial court, and that he "did then and there intentionally or knowingly fail to appear" on or about April 25, 2022, in accordance with the terms of his release.

During the trial in this case, the trial court admitted into evidence two sets of exhibits pertaining to the theft and tampering charges. The exhibits contained jury trial notices in both cases stating that a trial date had been set for April 25, 2022, and that a docket call had been set on the Tuesday before the trial date, and the notices each specified that "[a]ttorney and defendant are required to be present" and that "FAILURE TO APPEAR BY THE DEFENDANT WILL RESULT IN A WARRANT BEING ISSUED FOR HIS ARREST." Bail bonds for the two cases were included in the exhibits. Those bonds showed that bail had been made in the two cases to secure Ogbuehi's release and obligated him to appear in the trial court as a condition of his release. Both bail bonds were signed by Ogbuehi: one on May 12, 2017, and one on January 13, 2018. A certification from the trial court's bailiff stated that on April 25, 2022, the bailiff called Ogbuehi's name at the door of the courthouse but that he "came not, but wholly made default." The trial court's docket entry for April 25, 2022, noted that his bond was forfeited in the two cases because he "failed to answer." Additionally, the admitted exhibits included two capiases issued on April 27, 2022, directing law-enforcement officials to arrest Ogbuehi for failure to appear in the theft and tampering cases.

2

At trial, the State called one of Ogbuehi's previously appointed attorneys who served as his counsel in the theft and tampering cases until Ogbuehi hired an attorney. The appointed attorney testified that Ogbuehi had been out on bond in the two cases but failed to appear for the docket call on the Tuesday before the scheduled trial or on the day of trial despite efforts by the attorney to remind Ogbuehi to show up. The attorney recalled that Ogbuehi provided no documentation to excuse his absences.

Additionally, the State called the bailiff who had certified that Ogbuehi had failed to appear. When discussing court procedure, the bailiff explained that he calls out in the courtroom the names of defendants scheduled to appear, that he calls out a defendant's name three times in the hallway if the defendant does not answer in the courtroom, and that he documents when a defendant does not appear. Further, the bailiff testified that the State's exhibits showed that he called Ogbuehi's name three times on April 25, 2022, and later certified that Ogbuehi failed to appear despite his name being called. The bailiff also testified that he had not been given any documentation establishing a reason for Ogbuehi's absence on April 25, 2022. In his case-in-chief, Ogbuehi called his mother ("Mother") as a witness. On cross-examination, Mother testified that Ogbuehi had been out on bond.

After considering the evidence, the jury found Ogbuehi guilty of the two counts of bail jumping and failure to appeal. Ogbuehi elected to have the trial court assess his punishment. During the punishment phase, the trial court admitted certified prior judgments of conviction establishing that Ogbuehi was previously convicted of multiple counts of robbery and theft. The State called a former Target employee and a police officer as witnesses to testify about Ogbuehi's attempts to steal from the store in September 2015 and his subsequent arrest.

3

The Target employee testified that she saw Ogbuehi hiding merchandise on his person and recalled approaching him and telling him that she believed he was stealing merchandise. She testified that he ran away from her and that she got the attention of a police officer who was walking into the store. The employee also testified that the officer detained Ogbuehi and that the police handled the situation after that time. Additionally, the employee explained that the events were captured by security cameras in the store, and the footage was admitted into evidence and published. The footage shows a man walking around the women's section of the store and placing items in his shorts before leaving that area, running from a Target employee, and running from a police officer, who ultimately caught up with the man and placed him in handcuffs.

The police officer who arrested Ogbuehi testified that he went to the store to pick up video evidence in an unrelated case, that one of the employees got his attention, and that the employee said Ogbuehi "was actively committing a theft." The officer testified that he pursued Ogbuehi in the store and that Ogbuehi tried to get around him to exit the store. The officer recalled that he told Ogbuehi to stop multiple times. The officer also discussed blocking Ogbuehi's path, placing him in handcuffs, and directing him to the loss prevention office. In his cross-examination, the officer explained that he handcuffed and detained Ogbuehi at the front of the store and that Ogbuehi remained handcuffed until he was transported to jail. The officer also explained that he did not personally see Ogbuehi commit an offense but did see Ogbuehi take items from the store when reviewing the surveillance footage.

Ogbuehi appeals the trial court's judgments of conviction.

**GOVERNING LAW**

In his pro se briefing, Ogbuehi asserts that the evidence was insufficient to support his conviction. When reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). In making this determination, "[w]e view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted." *Stahmann*, 602 S.W.3d at 577. "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses." *Id.* "Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial," *id.*, and are "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence," *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012).

Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Appellate courts also must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The evidence is legally insufficient if "the

record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Id.* at 107 (quoting *Jackson*, 443 U.S. at 320).

"In some cases, . . . a sufficiency-of-the-evidence issue turns on the meaning of the statute under which the defendant has been prosecuted" and "[t]hat question, like all statutory construction questions, is a question of law, which we review *de novo*." *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015). "The overarching rule of statutory construction is that we construe a statute in accordance with the plain meaning of its text unless the text is ambiguous or the plain meaning leads to absurd results that the legislature could not possibly have intended." *Ex parte Vela*, 460 S.W.3d 610, 612 (Tex. Crim. App. 2015). "In ascertaining the plain meaning of a word, we read words and phrases in context and construe them according to the rules of grammar and usage." *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008); *see* Tex. Gov't Code § 311.011 (addressing common and technical usage of words in construing statutes). Appellate courts also interpret statutes "together and harmonized, if possible," to give effect to all of the statutory provisions. *See Ex parte Gill*, 413 S.W.3d 425, 430 (Tex. Crim. App. 2013). Appellate courts "presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible." *O'Brien v. State*, 544 S.W.3d 376, 384 (Tex. Crim. App. 2018). "If the plain language is clear and unambiguous," the "analysis ends because 'the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.'" *Id.* (quoting *Tha Dang Nguyen v. State*, 359 S.W.3d 636, 642 (Tex. Crim. App. 2012)).

As set out in the Penal Code, a person commits the offense of bail jumping and failure to appear "if he intentionally or knowingly fails to appear in accordance with the terms of

6

his release" after being "lawfully released from custody, with or without bail, on condition that he subsequently appear." Tex. Penal Code § 38.10(a). Chapter 38 of the Penal Code defines "[c]ustody" as meaning "under arrest by a peace officer or under restraint by a public servant pursuant to an order of a court of this state or another state of the United States" or "under restraint by an agent or employee of a facility that is operated by or under contract with the United States and that confines persons arrested for, charged with, or convicted of criminal offenses." *Id.* § 38.01(1).

## DISCUSSION

On appeal, Ogbuehi limits his sufficiency challenge to the evidence relating to whether he was lawfully released from custody. Specifically, he acknowledges that for him to be convicted of the two charged offenses, the evidence had to establish that he had been lawfully released from custody before later failing to appear, but he argues that the evidence could not have established that he was lawfully released from custody because his initial arrest was illegal. He notes that his arrest in September 2015 at Target formed the basis for his being placed in custody but urges that his detention at Target was not supported by reasonable suspicion and that his arrest was illegal because there was no warrant for that arrest, because no exception to the warrant requirement applied, because the officer had no probable cause to justify that arrest, and because the statutory requirements allowing individuals to prevent the consequences of theft were not complied with. *See* U.S. Const. amend. IV; Tex. Const. art. 1, § 9; Tex. Code Crim. Proc. arts. 14.01, .03, 18.16. He claims that because his arrest was illegal, his subsequent release from custody must also be unlawful.[2]

---

[2] In its appellee's brief, the State suggests that Ogbuehi's sufficiency challenge was inadequately briefed. *See* Tex. R. App. P. 38.1 (setting out requirements for appellant's brief

7

As support for his contention that his September 2015 arrest was illegal, Ogbuehi points to testimony from the Target employee and the police officer who testified during the punishment phase. Specifically, he highlights that the Target employee explained that she saw him in the women's department, observed him concealing items on his person, and handed the matter over to the police officer who was in the store. Based on this testimony, Ogbuehi asserts that there were no articulable facts to support his arrest because the employee did not sufficiently identify where he allegedly concealed items and asserts that his behavior was as consistent with innocent activity as it was with criminal activity. Similarly, Ogbuehi notes that the police officer admitted that he did not personally see Ogbuehi take any items and only saw the alleged offense on video after the officer arrived, and Ogbuehi points out that the officer handcuffed him at the front of the store after blocking his path and that the officer did not remove the handcuffs until he was taken to jail. Based on this evidence, Ogbuehi insists that the police officer did not have a sufficient basis to detain him, arrest him, and place him into custody. For these reasons, he urges this Court to conclude that the evidence was insufficient to support his conviction.[3]

---

including requirement that brief include argument for contentions made with appropriate citations to authorities and to record). In particular, the State contends that he does not adequately cite the record or governing law framing sufficiency challenges. However, in his briefing, he cites, among other cases, *Jackson v. Virginia*, 443 U.S. 307 (1979), which is "the seminal case on legal sufficiency." *Haney v. State*, 977 S.W.2d 638, 647 (Tex. App.—Fort Worth 1998, pet. ref'd), *abrogated on other grounds by Howland v. State*, 990 S.W.2d 274, 277 (Tex. Crim. App. 1999). In addition, in his briefing, he identifies which element he believes was not adequately supported by the record and includes citations to the reporter's record and the clerk's record. Accordingly, we disagree with the State's suggestion that Ogbuehi's sufficiency challenge was inadequately briefed. *See Ex parte Benavides*, 801 S.W.2d 535, 537 (Tex. App.—Houston [1st Dist.] 1990, writ dism'd w.o.j.) (noting that pro se documents are reviewed with liberality and patience when determining complaints).

[3] To the extent that Ogbuehi is suggesting in his briefing that the testimony from the police officer and Target employee should have been suppressed or otherwise excluded because his arrest in September 2015 was illegal, he did not preserve these claims because he failed to file a motion to suppress or make any objection on those grounds. *See* Tex. R. App. P. 33.1 (setting out

As an initial matter, we note that Ogbuehi's argument is based on evidence that was presented during the punishment hearing after the jury convicted him of the charged offenses. In a bifurcated trial like the one at issue here, "evidence that is introduced at the punishment stage of the trial can have little, if any, effect on the force of the evidence on the issue of guilt." *Barfield v. State*, 63 S.W.3d 446, 450 (Tex. Crim. App. 2001). Accordingly, in reviewing the sufficiency of the evidence presented during a bifurcated trial, "our consideration of the evidence is necessarily limited to that evidence before the jury at the time it rendered its verdict of guilt," *id.* (quoting *Munoz v. State*, 853 S.W.2d 558, 560 (Tex. Crim. App. 1993)), and "evidence from the punishment phase of a trial will not be considered in determining the sufficiency of the evidence to support a conviction," *Munoz*, 853 S.W.2d at 558, 560 n.3.

Even reading Ogbuehi's briefing liberally as more generally attacking the sufficiency of the evidence regarding the disputed element of lawful release presented during the guilt-innocence phase, we still cannot sustain his issue. Although the Penal Code does not define the phrase "released from custody," the Court of Criminal Appeals has determined that the phrase as used under section 38.10 includes freeing "a person from a more-restrictive form of custody" but leaving "some restrictions on the person's freedom of movement." *Timmins v. State*, 601 S.W.3d 345, 349-50 (Tex. Crim. App. 2020). Similarly, although the Penal Code does not define the term "lawfully," it does define the phase "unlawful" as meaning "criminal or tortious or

requirements for preserving issue for appellate consideration, including presenting complaint through objection or motion and either obtaining ruling from trial court or objecting to trial court's refusal to rule); *Smith v. State*, 243 S.W.3d 722, 726 (Tex. App.—Texarkana 2007, pet. ref'd) (concluding that issue asserting there was no probable cause or reasonable suspicion to justify detention was not preserved because "[t]here was no motion to suppress, no suppression hearing, and no complaint raised to the introduction of evidence"). Moreover, he has framed his appellate issue as one challenging the sufficiency of the evidence supporting his conviction, and sufficiency challenges are made in light of all the evidence presented at trial regardless of whether it was rightly or wrongly admitted. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020).

both . . . ." Tex. Penal Code § 1.07(a)(48). And the common meaning of the term lawful is "[n]ot contrary to law; permitted by law." Black's Law Dictionary 714 (7th abridged ed. 2000).

With these definitions in mind, we conclude that the use of the phrase "lawfully released from custody" in this context means that an individual's release from custody was done through a lawful process or authorized by a legal authority as opposed to someone escaping from custody or otherwise removing themselves from custody through a process not authorized by law. *See Fearon v. State*, 636 S.W.2d 17, 18 (Tex. App.—Corpus Christi-Edinburg 1982, pet. ref'd) (noting that "an escape is not a lawful release from custody, while bail is"). While Ogbuehi seems to suggest that there can be no offense under section 38.10 where there is evidence suggesting that the initial arrest that resulted in a person's being placed in custody was improper, the plain language of the statute does not support that construction because it does not address the lawfulness of that initial placement into custody and instead focuses on the lawfulness of the person's having been released from custody. *See* Tex. Penal Code § 38.10. That construction is consistent with the other offenses covered in Chapter 38, which are offenses obstructing governmental operation. *See id.* §§ 38.01-.19. For example, the offense of escape occurs when an individual escapes from custody when the person is under arrest. *See id.* § 38.06(a). Other portions of the Code do not require that the arrest be a lawful one; on the contrary, the applicable statutes specifically state that "[i]t is no defense . . . that the custody was unlawful." *Id.* § 38.08; *see also Granadoz v. State*, No. 07-18-00380-CR, 2019 WL 2167925, at *3 (Tex. App.—Amarillo May 17, 2019, pet. ref'd) (mem. op., not designated for publication) (noting that defendant's "challenge to the lawfulness of his detention and arrest is irrelevant . . . to the offense of escape").

As set out previously, during the trial, bail bonds pertaining to Ogbuehi's arrests for theft and tampering with evidence were admitted into evidence and showed that the bonds

10

were made to secure his release in those cases. His former attorney testified that he had been released on bond before failing to appear at trial, and Mother also testified that he had been released on bond.

Given our standard of review and given the reasonable inferences that could be made from the evidence presented at trial, we conclude that the evidence was sufficient to establish that Ogbuehi had been lawfully released from custody. *See Vanderhorst v. State*, 821 S.W.2d 180, 182 (Tex. App.—Eastland 1991, pet. ref'd) (concluding that "proof that [defendant] was released on an 'instanter bond' shows that he was lawfully released from custody"); *Fearon*, 636 S.W.2d at 18 (explaining that "one who is 'released on bail from custody' is perforce lawfully released within the meaning of the statute").

Accordingly, we overrule Ogbuehi's issue on appeal.

## CONCLUSION

Having overruled Ogbuehi's issue on appeal, we affirm the trial court's judgments of conviction.

_____

Karin Crump, Justice

Before Justices Theofanis, Crump, and Ellis

Affirmed

Filed:   January 31, 2025

Publish

11